# Exhibit H

SHORT FORM ORDER

SUPREME COURT - STATE OF NEW YORK

Present:

**HON. STEPHEN A. BUCARIA**
                                        Justice

MICHAEL ENGELBERG, derivatively on
behalf of the American Center for Civil
Justice, Inc.,

            Plaintiff,

-against-

ELIEZER PERR, JEDIDIAH PERR and
MILTON POLLACK,

           Defendants,

THE AMERICAN CENTER FOR CIVIL
JUSTICE, INC.,

           Nominal Defendant,

THE NEW YORK CENTER FOR CIVIL JUSTICE,
TOLERANCE & VALUES, INC.,

           Additional Defendant on Counterclaims.

TRIAL/IAS, PART 1
NASSAU COUNTY

INDEX No. 606919/14
MOTION DATE: 4/25/17
Motion Sequence # 010

The following papers read on this motion:

       Notice of Motion.......................................X
       Affirmation in Support............................X
       Affirmation in Opposition.......................X

Motion by plaintiff Michael Engelberg for leave to file an amended derivative complaint is **granted.**

This is a derivative action on behalf of a not-for profit corporation. Plaintiff Michael Engelberg was a founder of The Raoul Center for Civil Justice, Inc., the predecessor of

**ENGELBERG v PERR**  Index No.: 606919/14

nominal defendant The American Center for Civil Justice, Inc. ("ACCJ"). ACCJ is a non-profit corporation which advises victims of terrorism as to how to obtain compensation and retains counsel for the victims in order to pursue personal injury actions. Although ACCJ is a charitable organization pursuant to Internal Revenue Code § 501[c](3), it is funded largely by "pledges," or agreements with the victims, to pay 20 or 25% of their recoveries to the non-profit corporation.

This action was commenced on December 29, 2014. Engelberg alleges that defendant Eliezer Perr, his son, defendant Jedidiah Perr, and defendant Milton Pollack, the former president of ACCJ, breached their fiduciary duties to the company. Among the breaches alleged are that defendants abused ACCJ's tax exempt status by appropriating the company's charitable funds for themselves (proposed amended derivative complaint at 2). Engelberg alleges that defendants caused ACCJ's assets, income, and profit to enure to their benefit by diverting "corporate opportunities," i.e. terrorism litigation, to a New Jersey non-profit, The American Center for Civil Justice, Religious Liberty and Tolerance, Inc ("New Jersey Center"). Additionally, Engelberg alleges that defendants donated over $800,000 of ACCJ's funds to Jewish religious and educational organizations beyond the scope of ACCJ's mission.

The New Jersey Center was formed by defendant Jedidiah Perr in 2001. During 2003, various ACCJ clients obtained default judgments against Iran in terrorism litigation (See, Diana Campuzano, et al. v. Neal Sher, Michael Engelberg, and The American Center for Civil Justice, Index No 605379/16). However, collection of these judgments proved exceedingly difficult. On April 12, 2007, defendant Milton Pollack, purporting to act on behalf of ACCJ, entered into an agreement with Jedidiah Perr, on behalf of the New Jersey Center (deft's ex E).

The agreement recites that ACCJ clients had obtained judgments against Iran and Libya, but "ACCJ does not see itself [as] able" to collect the judgments, and "no collection/recovery efforts by ACCJ have been undertaken." The parties agreed that the New Jersey Center was appointed as the "exclusively authorized entity representing recovery efforts on behalf of ACCJ and ACCJ's claimants." The New Jersey Center undertook to "trace and locate attachable assets of debtors, both in the U.S. and abroad." The New Jersey Center would "assist and oversee various agreements with attorneys, responsible for enforcing the judgments, as well as agreements with experts and researchers." The New Jersey Center would "interact [with] and update claimants throughout the collection process, as it deems necessary." Finally, the New Jersey Center would "oversee the distribution of monies from all recoveries to the engaged attorneys, experts, and claimants."

For these services, the New Jersey Center was to receive, after all expenses and costs were paid, "50% of ACCJ's financial commitment from claimants." Although denominated a "pledge" in ACCJ's agreements with the claimants, the term "financial commitment"

FILED: NASSAU COUNTY CLERK 05/18/2017
INDEX NO. 606919/2014
NYSCEF DOC. NO. 138
RECEIVED NYSCEF: 05/19/2017

Case 18-15691-CMG    Doc 43-10    Filed 05/08/18    Entered 05/08/18 21:30:37    Desc
Exhibit H - 5-1917 order in Engelberg Derivative Litigation    Page 4 of 5

**ENGELBERG v PERR**  Index No.: 606919/14

makes clear that both ACCJ and the New Jersey Center considered the claimant's 20-25% contribution as binding (See **Woodmere Academy v Steinberg**, 41 NY2d 746 [1977]). As the court has noted in prior decisions, the fee sharing agreement appears to violate the ethical constraint against splitting legal fees with non-attorneys, (Judiciary Law § 491), as well the client's absolute right to discharge an attorney at any time (**Matter of Cooperman**, 83 NY2d 465, 473 [1994]). Moreover, because the fee sharing agreement avoids dependence upon public support, and its attendant public scrutiny, it facilitates abuse of ACCJ's tax exempt status (See, **Lapham Foundation v IRS**, 389 F.3d 606 [6th Cir. 2004]). Thus, ACCJ's business model is flawed in several fundamental respects.

On October 8, 2013, Neal Sher, Esq, general counsel to ACCJ, purporting to act on behalf of ACCJ, entered into an amendment to the April 2007 agreement with Jedidiah Perr, on behalf of the New Jersey Center (deft's ex G). The amendment affirms the 50% "sharing provision" but provides that the New Jersey Center may retain $850,000 "to cover previous, current, and future collection expenses."

By order to show cause dated April 4, 2017, plaintiff moves for leave to serve an amended derivative complaint, naming the New Jersey Center as a defendant. Engelberg argues that joinder is necessary to obtain complete relief because the New Jersey Center is an alter ego of the individual defendants, and/or ACCJ, and improperly received opportunities and charitable funds belonging to the company.

In opposition to the motion for leave to amend, defendant Jedidiah Perr argues that the collection and fee-sharing agreement was "approved and ratified" by ACCJ's board of directors. In addition to the October 2013 amendment signed by Sher, defendant relies upon the minutes of a meeting of ACCJ's board dated April 1, 2007 (deft's ex H). Although the minutes recite that the board of directors consents to the contract, the minutes are signed only by defendant Milton Pollack.

Leave to amend a pleading shall be freely given upon such terms as may be just (CPLR 3025(b). However, leave to amend may be denied where the proposed amendment is palpably improper or insufficient as a matter of law, or prejudice or surprise will directly result from the delay in seeking amendment (**Koenig v Action Target**, 76 AD3d 997 [2d Dept. 2010]).

No part of the assets, income, or profit of a not-for profit corporation may enure to the benefit of its members, directors, or officers (N-PCL § 102[five]). Just as the goal of a for-profit corporation is to make money for its investors, the goal of a not-for-profit corporation is to make money that can be spent on furthering its social welfare objectives (**Baptist Churches v Galloway**, 271 AD2d 92, 97 [1st Dept. 2000]). Thus, where an officer of a non-profit corporation diverts a corporate opportunity by diverting corporate business to another

3

**ENGELBERG v PERR**  Index No.: 606919/14

entity in which he has an interest, the officer breaches his fiduciary duty to the non-profit corporation. Although Jedidiah Perr denies that he has ever held a position on the ACCJ board, his father, Eliezer Perr, was an ACCJ founder. Regardless of whether Eliezer Perr held a position on the New Jersey Center's board, by virtue of his son's position on the New Jersey Center board, Eliezer Perr had an interest in that corporation. Because Eliezer Perr had an interest in the collection and fee sharing contract, he could not vote for its approval and his interest was required to be disclosed to the other ACCJ directors (BCL § 713).

Plaintiff has made a sufficient showing of merit with respect to the proposed amended derivative complaint. There is no surprise or prejudice stemming from the amendment because the scheme of diverting business opportunities to the New Jersey Center was alleged in the original pleading. Accordingly, plaintiff's motion for leave to file an amended derivative complaint is **granted**. The amended derivative complaint is deemed served in the form annexed as exhibit 2 to plaintiff's motion.

So ordered.

Dated MAY 16 2017

_____
J.S.C.

ENTERED
MAY 18 2017
NASSAU COUNTY
COUNTY CLERK'S OFFICE