# Exhibit J

FILED: NASSAU COUNTY CLERK 01/03/2018 02:25 PM
NYSCEF DOC. NO. 321
INDEX NO. 605379/2016
RECEIVED NYSCEF: 01/03/2018

Case 18-15691-CMG    Doc 43-12    Filed 05/08/18    Entered 05/08/18 21:30:37    Desc
Exhibit J - 1-2-18 order in Campuzano Litigation    Page 2 of 10

SHORT FORM ORDER

SUPREME COURT - STATE OF NEW YORK

Present:

**HON. STEPHEN A. BUCARIA**
                      Justice

|  |  |
|---|---|
| DIANA CAMPUZANO, AVI ELISHIS, and GREGG SALZMAN, | TRIAL/IAS, PART 1<br>NASSAU COUNTY<br><br>INDEX No. 605379/16 |
| Plaintiff, | MOTION DATE: Dec. 11, 2017<br>Motion Sequence # 006; 008 |
| -against- |  |
| NEAL SHER; MICHAEL ENGELBERG; and THE AMERICAN CENTER FOR CIVIL JUSTICE, INC., f/k/a THE RAUL WALLENBERG CENTER FOR CIVIL JUSTICE, |  |
| Defendants. |  |

The following papers read on this motion:

    Notice of motion.......................................XX
    Affidavit in Support................................XX
    Affirmation in Opposition.......................XX

    Motion by defendant American Center for Civil Justice for relief from the order dated July 27, 2017, restraining defendant from disbursing funds whether in the ordinary course of business or otherwise, is **granted** only to the extent of approving the disbursements itemized herein and is otherwise **denied**. Motion by plaintiffs Diana Campuzano, Avi Elishis, and Gregg Salzman for sanctions against defendants Neal Sher and American Center for Civil Justice for prolonging the deposition of defendant Michael Engelberg is **denied**.

1

FILED: NASSAU COUNTY CLERK 01/04/2018 02:23 PM        INDEX NO. 605379/2016
NYSCEF DOC. NO. 321                                  RECEIVED NYSCEF: 01/04/2018

Case 18-15691-CMG    Doc 43-12    Filed 05/08/18    Entered 05/08/18 21:30:37    Desc
              Exhibit J - 1-2-18 order in Campuzano Litigation    Page 3 of 10

**CAMPUZANO v SHER, et al**                                **Index no. 605379/16**

The present application for the payment of legal fees and other expenses arises in the context of three related actions involving the administration of defendant, The American Center for Civil Justice, Inc. ("ACCJ"), a not-for-profit corporation, formed to promote and fund personal injury lawsuits seeking compensation for victims of terrorist activity.

Defendant Michael Engelberg, a physician, and Eliezar Perr, who is a rabbi, founded The Raoul Wallenberg Center for Civil Justice, Inc., on November 21, 1996. The Wallenberg Center was formed to establish a "civil rights organization" for the benefit of victims of terrorist activity. The Wallenberg Center's articles of incorporation provide that the Center was organized exclusively for the purposes of being a charitable organization pursuant to Internal Revenue Code §501[c](3). The organization's purposes included maintaining a "network of lawyers, researchers, journalists, investigators, and government officials" and promot[ing] legislation that will simplify and speed the collection of punitive damages" (Id). The purposes of the Center also included "advis[ing] victims of their rights and methods of addressing compensation," and identifying the "resources and assets of the..sponsors of terrorism," matters traditionally within the realm of legal representation. The Wallenberg Center was formed shortly after the federal Foreign Sovereign Immunities Act was amended by Congress to allow suits against states and organizations which support terrorist activity to proceed (See, **Calderon-Cardona v Bank of New York**, 770 F.3d 993, 998 [2d Cir 2014]).

The Raoul Wallenberg Center changed its name to The American Center for Civil Justice, Inc. ("ACCJ") in April, 1999 (Dkt 89). ACCJ is a tax exempt organization pursuant to IRC § 501(c)(3). On January 20, 2005, ACCJ's certificate of incorporation was amended to permit "distributions to such organizations and those that are committed to perpetuate the causes of civil liberties, civil justice, religious freedom and tolerance as guaranteed by the U.S. Constitution, and those that qualify as exempt organizations under § 501[c](3) of the Internal Revenue Code...." (Dkt 90).

ACCJ's method of doing business is to solicit victims of terrorism, or their estates, and then to elicit a "power of attorney," purporting to appoint Engelberg as their "true and lawful attorney" with "full power and authority" to commence litigation against "persons, agencies, governments, government instrumentalities" responsible for the attack. After the power of attorney is obtained, ACCJ then enters into a "claimant and center agreement" with the victims or their estate. The claimant agreement provides that ACCJ will advance the out-of-pocket expenses of contemplated litigation and be reimbursed from the proceeds recovered. However, if the victim fails to "cooperate with [the] attorney" recommended by ACCJ "or otherwise terminates this agreement," the victim is required to reimburse ACCJ for those expenses. In consideration of ACCJ's services, the victim makes a "pledge" to pay ACCJ 20% of the "net proceeds" of the recovery.

FILED: NASSAU COUNTY CLERK 01/03/2018 02:25 PM
NYSCEF DOC. NO. 321
INDEX NO. 605379/2016
RECEIVED NYSCEF: 01/03/2018

Case 18-15691-CMG    Doc 43-12    Filed 05/08/18    Entered 05/08/18 21:30:37    Desc
Exhibit J - 1-2-18 order in Campuzano Litigation    Page 4 of 10

**CAMPUZANO v SHER, et al**                                    **Index no. 605379/16**

On February 13, 2003, Engelberg retained the law firm of Piper Rudnick, to represent two groups of ACCJ claimants, the Heiser plaintiffs and the Campball plaintiffs, in an action against Iran in the United States District Court for the District of Columbia. Piper Rudnick subsequently obtained a default judgment in favor of the Heiser/Campbell, allegedly in the amount of approximately $291 million (Dkt 13 at ¶ 11).

On November 29, 2007, Engelberg retained Piper Rudnick's successor, DLA Piper, for the purpose of collecting the Heiser and Campbell plaintiffs' judgment (Dkt 115). DLA Piper was to receive a contingency fee of 10% of the first $100 million collected, 15% of recoveries between $100 million and $200 million, and 20% of all recoveries over $200 million. ACCJ and DLA Piper agreed that, for DLA Piper to represent the other judgment creditors, the other judgment creditors would have to "subordinate" their judgments to the judgments of the Heiser/Campbell plaintiffs, unless a court of competent jurisdiction were to order a different priority. Finally, DLA Piper and ACCJ agreed that, if DLA Piper did represent the other judgment creditors, it would be paid pursuant to a separate fee agreement, which would not be "less, on a percentage basis," than the contingency fee for collecting the Heiser/Cambell judgment.

On July 14, 2011, Engelberg retained DLA Piper for the purpose of collecting the judgments held by judgment creditors other than the Heiser/Campbell plaintiffs (Dkt 116). Engelberg and DLA Piper agreed that the Heiser/Campbell judgments would be paid in full, and the other judgment creditors would then be paid on a "pro rata basis." Engelberg and DLA Piper agreed that DLA Piper would be paid on a contingency fee basis, 15% of the first $250 million recovered, and 10% of all recoveries over $250 million.

The same day that DLA Piper was retained for the non-Heiser/Campbell plaintiffs, ACCJ sent out a notice to all its "Judgment Creditors." Noting that collection of judgments against Iran remained "extremely difficult" and that judgment creditors often "pit themselves" against each other seeking to obtain priority, ACCJ proposed that it would engage the "international law firm" of DLA Piper to attempt to collect their judgments. ACCJ claimed that DLA Piper was under a "legal and ethical constraint" to satisfy the $591,089,956.00 Heiser and Campbell judgments in full, before the ten other ACCJ claimants received any payment. The notice proposed that, after the Heiser and Campbell judgments were paid, the ten other ACCJ claimants would receive a "pro rata distribution" from any funds which were remaining. DLA Piper's fee for this service would be based on a contingency fee only and would not exceed 20%. ACCJ claimed that the arrangement was "extremely fair and quite favorable to you" and the "combined fees" of ACCJ and DLA Piper would "not exceed 40%."

**CAMPUZANO v SHER, et al**  **Index no. 605379/16**

In September 2013, ACCJ adopted amended bylaws, providing that ACCJ would have no members and would be managed by the board of directors (Dkt 92). Engelberg was allegedly a director of ACCJ at all relevant times.

On December 29, 2014, Engelberg commenced a derivative action against Perr and other officers or directors of ACCJ for breach of fiduciary duty. Engelberg alleges that the defendants have diverted over $20 million of ACCJ funds to profit and not-for-profit companies which they own or control (Index No 606919/14). Engelberg further alleges that defendants have donated over $837,000 of ACCJ funds to various Jewish and educational organizations unrelated to ACCJ's purpose of obtaining compensation for victims of terrorist activity.

Engelberg alleges that Eliezar and Jedidiah Perr diverted settlement proceeds to another not-for-profit, The American Center for Civil Justice, Religious Liberty, and Tolerance, Inc., which Jedidiah Perr established in New Jersey. Engelberg further alleges that Jedidiah Perr diverted terrorism litigation to American Recovery Center, LLC, ("ARC"), a for-profit limited liability company of which he is the sole member. Finally, Engelberg seeks an accounting as to the affairs of ACCJ.

In their answer, defendants Eliezer Perr, Jedidiah Perr, and Milton Pollack assert counterclaims against Engelberg for breach of fiduciary duty, and a declaratory judgment that plaintiff Engelberg is not a director of ACCJ. Defendants allege that plaintiff Engelberg has enriched himself by paying himself over $1.2 million between 2001-2003 from the ACCJ, as well as $340,000 in pension contributions. While Perr and Pollack purport to assert these counterclaims individually, there are actually derivative claims on behalf of ACCJ. Additionally, defendants allege that Engleberg channeled funds to a charity which he controlled, the New York Center for Civil Justice, Tolerance & Values, Inc. The New York Center obtained its tax exempt status by representing to the Department of Treasury that it met the 1/3 "public support test" (See Dkt 47, Index No 601689/16 infra).

On March 14, 2016, Joseph Orlow and other individuals who claimed to be innocent board members of the New York Center for Civil Justice, Tolerance & Values brought a derivative action against Engelberg for breach of fiduciary duty and seeking to remove him as a board member (Index No 601689/16). Orlow alleges that Engelberg enriched himself by diverting $4.3 million of ACCJ's charitable assets to the New York Center. Orlow asserts that the New York Center is not a bona fide charitable organization.

On June 21, 2016, in view of the reciprocal claims of breach of fiduciary duty on the part of the directors of the ACCJ, the court on its own motion restrained the parties from

FILED: NASSAU COUNTY CLERK 01/04/2018 02:25 PM
NYSCEF DOC. NO. 192
INDEX NO. 605379/2016
RECEIVED NYSCEF: 01/04/2018

Case 18-15691-CMG    Doc 43-12    Filed 05/08/18    Entered 05/08/18 21:30:37    Desc
Exhibit J - 1-2-18 order in Campuzano Litigation    Page 6 of 10

**CAMPUZANO v SHER, et al**                                    **Index no. 605379/16**

conducting any unauthorized activities, not authorized by the certificate of incorporation, or paying out or transferring any property of ACCJ, except in the ordinary course of business or by permission of the court. The court directed the parties to submit an accounting of the affairs of ACCJ for the five years preceding the commencement of the action. The balance sheet of ACCJ, which was submitted in response to the order, showed net assets of $1,942,300.75, as of June 30, 2016. Since ACCJ's net assets were $5,915,477.09 on March 31, 2011, its net assets had decreased by $3,973,176.34 in a little over a five year period.

Plaintiff Diana Campuzano, commenced the present action against defendants Neal Sher, Michael Engelberg, and ACCJ on July 20, 2016. Campuzano was injured in a terrorist attack in downtown Jerusalem on September 4, 1997. Campuzano executed ACCJ's standard power of attorney, authorizing Engelberg to commence litigation on her behalf, on December 16, 1997. On September 10, 2003, defendant Neal Sher, as general counsel to ACCJ, obtained a default judgment in favor of Campuzano against Iran in the United States District Court for the District of Columbia in the amount of $18,952,725 (See, **Campuzano v Islamic Rep. of Iran**, 281 F.Supp.2d 258, 274 [D.D.C 2003]). The court awarded $17,000,000.00 compensatory damages, and $1,952,725 for loss of income. On July 26, 2011, Campuzano accepted the DLA Piper retainer and contingency fee agreement, containing the "subordinated" judgment creditor contingency rates (Dkt 96).

Campuzano alleges that defendants breached their fiduciary duty to plaintiff by failing to submit a claim on her behalf with a federal restitution trust fund, consisting of approximately $1.9 billion. The fund is being administered by Stanley Sporkin, the trustee appointed by United States District Court Judge Katherine Forrest, in the Southern District of New York (See, **Bank Markazi v Peterson**, 136 S.Ct. 1310 [2016]). ACCJ submitted a claim against the fund on behalf of the Heiser plaintiffs. Campuzano asserts claims for malpractice and violation of Judiciary Law § 487 as to defendant Sher and breach of fiduciary duty and negligence as to all of the defendants. Campuzano has not named Perr as a defendant in her action.

By orders dated September 29 and November 16, 2016, Campuzano's motion for an order of attachment was granted as against defendants Engleberg and ACCJ in the amount of $9,512,860, the pro rata portion of her judgment which she would have recovered had ACCJ filed a claim with the federal restitution fund on her behalf (Dkt 130, 187, 188). Although the court granted plaintiff an order of attachment as to all of ACCJ's assets, Campuzano chose to levy only upon ACCJ's "interest" in the funds "scheduled to be released" to the Heiser plaintiffs in the action before Judge Forrest. In view of sovereign immunity, no garnishment or other process of this court could be directed to Trustee Sporkin (See, **Carpenters Pension Fund v Dept. of Health**, 721 F.3d 217 [4th Cir 2013]). Thus, the order of attachment states upon its face in bold type, "This order of attachment may not

FILED: NASSAU COUNTY CLERK 01/03/2018 02:25 PM   INDEX NO. 605379/2016
NYSCEF DOC. NO. 121                              RECEIVED NYSCEF: 01/03/2018

Case 18-15691-CMG    Doc 43-12    Filed 05/08/18    Entered 05/08/18 21:30:37    Desc
Exhibit J - 1-2-18 order in Campuzano Litigation    Page 7 of 10

**CAMPUZANO v SHER, et al**     Index no. 605379/16

be served upon Stanley Sporkin, trustee, or upon any other federal officer of employee."

On July 27, 2016, in view of Engleberg and Perr's reciprocal claims of breach of fiduciary duty, and Campuzano's order of attachment, this court restrained defendants Sher, Engelberg, Perr, and ACCJ from disbursing any funds of ACCJ, whether in the ordinary course of business or otherwise, pending further order of the court (Dkt 40) (Cf. N-PCL § 1113).

On March 20, 2017, on consent of all parties, including the New York State Attorney General, the court granted relief from the restraining order to the extent of permitting ACCJ to pay defendant Neal Sher, ACCJ's general counsel, $62,500 representing his salary from October 2016 through February 2017; $149,300 to Koffsky Schwalb LLC (counsel to Perr in the derivative action and counsel to ACCJ in the Campuzano action); as well as a variety of miscellaneous expenses.

On April 4, 2017, the court permitted payment of $158,074 to the law firm of Loeb & Loeb for attorney fees representing ACCJ in an inquiry by the Attorney General from August 2016 to February 2017. The court also approved a payment to "Ethics Counsel" Roy Simon in the amount of $12,242. Additionally, the court approved payment of $24,390 to outside counsel in the United Kingdom and $38,902 to Torys, LLP, outside counsel in Canada.

By order dated April 27, 2017, the court granted ACCJ relief from the restraining order to the extent of approving additional payments. The Weinrib Law Firm, PLLC, who represents ACCJ in the derivative action, was granted legal fees and expenses of $50,000.00. Defendant Neal Sher, general counsel to ACCJ, was permitted to draw his $12,500.00 monthly salary through the end of 2017.

By notice of motion dated November 21, 2017, defendant ACCJ moves for relief from the July 27, 2016 order to the extent that it restrains defendant from disbursing any funds without the approval of the court. In the alternative, ACCJ requests that it be permitted to pay $181,747.07 to Koffsky Schwalb, LLC for legal fees in both the Engelberg and Campuzano actions; $117,476.25 to The Weinreb Law Firm, PLLC for legal fees in both the Engelberg and Campuzano actions; $73,491.79 to Torys, LLP, its outside counsel in Canada; $280.21 to Prof. Dan Sarooshi, its outside counsel in the United Kingdom; $37,086.00 to Prof. Roy Simon, a legal ethics expert; $89,965.00 to Loeb and Loeb, LLP, ACCJ's non-profit counsel; $15,750.00 to Lourdes Morena, Esq; $245,697.47 to Eliezer Perr, ACCJ's Executive Director for "back salary;" $5,675.40 to Diamond Reporting and Legal Video for court reporting/transcription services; $1,236.00 to Precision Legal Services

6

FILED: NASSAU COUNTY CLERK 01/03/2018 03:25 PM                    INDEX NO. 605379/2016
NYSCEF DOC. NO. 303                                              RECEIVED NYSCEF: 01/03/2018
Case 18-15691-CMG    Doc 43-12    Filed 05/08/18    Entered 05/08/18 21:20:37    Desc
                Exhibit J - 1-2-18 order in Campuzano Litigation    Page 8 of 10

**CAMPUZANO v SHER, et al**                                      **Index no. 605379/16**

for litigation support; and $711.77 to Printing House Press for appellate printing services. ACCJ asserts that there is a "significant risk" that it will be forced to cease operations, if this relief is not granted.

Koffsky Schwalb represents defendant Eliezar Perr in the derivative action, and the claims made in the related Campuzano action could themselves give rise to a derivative claim against Perr. Thus, the application to pay legal fees to Koffsky Schwalb is in the nature of a request on the part of Perr for indemnity for legal expenses. Under Not-for-Profit Corporation Law § 722[c], a director named as a defendant in a derivative action brought on behalf of the charitable corporation may receive indemnity for legal expenses, only if the director acted in "good faith," for a purpose which he reasonably believed to be in the "best interests" of the charitable corporation.

In previous orders, the court expressed concern as to the lawfulness of ACCJ's business model, specifically whether ACCJ was engaged in the unauthorized practice of law, whether ACCJ's contingency fee arrangement constituted fee splitting, whether the provision for payment of litigation expenses if Campuzano discharged her attorney chilled the client's absolute right to discharge her attorney, and whether DLA Piper's representation of Heiser/Campbell plaintiffs, as well as the "subordinated" judgment creditors, constituted a conflict of interest. In response to these ethical concerns, defendant Perr submits the opinion of legal ethics expert Prof. Roy Simon. The court will consider Prof. Simon's detailed opinion on the question of whether defendant Perr acted in good faith.

Although Judiciary Law § 495 prohibits corporations and voluntary associations from practicing law, § 495(7) exempts non-profit organizations "organized and operating primarily for a purpose other than the provision of legal services and which furnish legal services as an incidental activity in furtherance of their primary purpose." Prof. Simon suggests that ACCJ's primary purpose is educational and lobbying for legislation to prevent terrorism. However, absent proof that ACCJ lawfully obtained its non-profit status, and continues to be primarily funded through public support, as opposed to contingency fees, the court cannot conclude that ACCJ is exempt under Judiciary Law § 495(7).

Prof. Simon argues that the contingency fee arrangement entered into by Campuzano was "more favorable" than the contingency fee arrangement which DLA Piper granted to the Heiser plaintiffs. However, assuming for example a recovery of $199,999,999 on behalf of both the Heiser plaintiffs and Campuzano, the Heiser plaintiffs would pay a contingency fee of 12.5%, while Campuzano would pay a contingency fee of 15%. Moreover, because Campuzano would not be paid until the Heiser plaintiffs were paid in full, it is unlikely that her recovery will be as great as that of the Heiser plaintiffs. In any event, ACCJ has not established that Campuzano gave her informed consent.

**CAMPUZANO v SHER, et al**                              **Index no. 605379/16**

Despite the apparent ethical violations, Prof. Simon argues that ACCJ, as a "group legal services organization," has a first amendment right to engage in litigation on behalf of victims of terrorism. Under the first amendment, political advocacy organizations, such as the NAACP and the ACLU, have the right to engage in "associational litigation" and to solicit potential clients to advance their policy goals (**NAACP v Button**, 371 U.S. 415 [1963]; **In re Primus**, 436 U.S. 412 [1978]). Additionally, members of a labor union have a first amendment right to associate with each other to obtain legal representation and to vindicate their collective rights, including the right to a safe workplace (**Brotherhood of Trainmen v Va. State Bar**, 377 U.S. 1 [1964]).

Attorneys have their own first amendment protections when participating in advocacy groups, such as the NAACP and the ACLU, for the "advancement of beliefs and ideas" (**Jacoby & Meyers v Presiding Justices**, 852 F.3d 178, 186 [2d Cir. 2017]). However, when engaging in litigation for their own "commercial rewards," such as personal injury cases, attorneys are subject to "plenary regulation" by government (Id).

Because terrorism is intentional violence motivated by a political agenda, terrorism litigation cannot be equated with a garden variety personal injury case. Nevertheless, ACCJ has not advanced any belief or idea, other than the indisputable proposition that terrorism is evil. While collecting large judgments against state sponsors of terrorism may discourage terrorism to some indefinite extent, ACCJ has not established that the prophylactic effect of its litigation is greater than that in a serious negligence case. On the other hand, the reciprocal claims in the Engleberg action establish that the "commercial rewards" stemming from ACCJ's business model are considerable. The court concludes that ACCJ's business model is not protected by the first amendment.

Nevertheless, until March 24, 2017, when the Second Circuit clarified and restated the law as to the first amendment rights of attorneys to engage in litigation, the issue was somewhat in doubt (**Jacoby & Meyers v Presiding Justices**, supra, 852 F.3d 178). Thus, the court concludes that defendant Perr was in good faith at the time the court granted his prior application for attorney fees, as well as that of general counsel Sher for salary, on March 20, 2017. Following the Second Circuit decision, the court can no longer conclude that defendant Perr was in good faith.

Accordingly, defendant ACCJ's motion to vacate the restraining order dated July 27, 2016, or in the alternative to pay all necessary expenses including salary of officers and employees, is **denied**.

Defendant ACCJ's motion that it be permitted to pay $181,747.07 to Koffsky Schwalb, LLC for legal fees in both the Engelberg and Campuzano actions and $245,697.47 to defendant Eliezer Perr, its Executive Director, for "back salary" is similarly **denied**.

FILED: NASSAU COUNTY CLERK 01/03/2018 02:25 PM
NYSCEF DOC. NO. 321
Case 18-15691-CMG    Doc 43-12    Filed 05/08/18    Entered 05/08/18 21:30:37    Desc
Exhibit J - 1-2-18 order in Campuzano Litigation    Page 10 of 10
INDEX NO. 605379/2016
RECEIVED NYSCEF: 01/03/2018

**CAMPUZANO v SHER, et al**     **Index no. 605379/16**

Defendant ACCJ's motion that it be permitted to pay $73,491.79 to Torys, LLP, its outside counsel in Canada; $280.21 to Prof. Dan Sarooshi, its outside counsel in the United Kingdom; $37,086.00 to Prof. Roy Simon, a legal ethics expert; $89,965.00 to Loeb and Loeb, LLP, its non-profit counsel; $15,750.00 to Lourdes Morena, Esq; $5,675.40 to Diamond Reporting and Legal Video for court reporting/transcription services; $1,236.00 to Precision Legal Services for litigation support; and $711.77 to Printing House Press for appellate printing services is **granted**.

Defendant ACCJ's motion to pay $117,476.25 to The Weinreb Law Firm, PLLC for legal fees in both the Engelberg and Campuzano actions is **denied**, with leave to renew upon amended articles of incorporation, requiring that at least 1/3 of ACCJ's funding be provided by voluntary contributions, and otherwise approved by the Attorney General (See, 26 U.S.C. § 509[a]). The dependence of public charities upon public support guards against the abuses illustrated by the Engleberg action (**Lapham Foundation v Commissioner**, 389 F.3d 606 [6th Cir. 2004]).

By notice of motion dated November 29, 2017, plaintiffs Diana Campuzano, Avi Elishis, and Gregg Salzman move for sanctions against defendants Neal Sher and ACCJ for prolonging the deposition of defendant Michael Engelberg. The deposition was conducted by defendant Sher, who has appeared pro se. The transcript of the deposition is 1,018 pages. While the deposition was lengthy and the questions probing, there was no harassment of the witness or undue delay. Plaintiffs' motion for sanctions is **denied**.

So ordered.

Date: 2 January 2018

_____
J.S.C.

**ENTERED**

JAN 0 3 2018

NASSAU COUNTY
COUNTY CLERK'S OFFICE