| |
|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** |
| Mark J. Politan, Esq. |
| **POLITAN LAW, LLC** |
| 88 East Main Street, #502 |
| Mendham, New Jersey 07945 |
| (973) 768-6072 |
| mpolitan@politanlaw.com |
| |
| -and |
| |
| Robert J. Tolchin, Esq. |
| **THE BERKMAN LAW OFFICE, LLC** |
| 111 Livingston Street, Suite 1928 |
| Brooklyn, New York 11201 |
| (718) 855-3627 |
| rtolchin@berkmanlaw.com |
| |
| *Attorneys for Diana Campuzano, Avi Elishis, and Gregg Salzman* |

| | |
|---|---|
| In Re: <br> AMERICAN CENTER FOR CIVIL JUSTICE, INC. <br><br>            Debtor-in Possession. | Case No.:    18-15691 (CMG) <br> Chapter:      11 <br> Judge:        Christine M. Gravelle <br><br> **Hearing Date and Time:** <br> **June 26, 2018 at 2:00 p.m.** <br><br> **ORAL ARGUMENT REQUESTED** |

**RESPONSE IN LIMITED OPPOSITION OF DIANA CAMPUZANO, AVI ELISHIS, AND GREGG SALZMAN TO DEBTOR'S MOTION TO ASSUME <u>EXECUTORY STIPULATION OF SETTLEMENT</u>**

TO:    THE HONORABLE CHRISTINE M. GRAVELLE

        UNITED STATES BANKRUPTCY JUDGE

1. Diana Campuzano, Avi Elishis and Gregg Salzman (the "Campuzano Creditors") respectfully submit this response in limited opposition to the Debtor's motion which seeks authorization to assume the executory stipulation of settlement ("Settlement Agreement") which was entered into in New York State court to resolve the derivative litigation styled *Michael Engelberg, derivatively on behalf of the American Center for Civil Justice, Inc. v. Eliezer Perr, Jedidiah Perr, Milton Pollack and American Center for Civil Justice, Religious Liberty and Tolerance, Inc., Defendants, American Center for Civil Justice, Nominal Defendant, and The New York Center for Civil Justice, Tolerance and Values, Inc., Additional Defendant on Counterclaims,* Supreme Court of the State of New York, Nassau County index number 606919/14 ("Derivative Action).

2. Assuming the parties to the Settlement Agreement wish to proceed with it, the Campuzano Creditors have no objection.

3. However, there are aspects of the Debtor's application that may give the Court pause.

4. First, the application is completely silent as to the standard to be applied by the Court in ruling on this application to assume the Settlement Agreement—proper exercise of business judgment—and how that standard is to be applied here. It would seem that the Court has an obligation to review the impact of the assumption even if there are no objections. The application fails to address the impact of the assumption on the Debtor's estate. Similarly, the application fails to address the impact of assumption of the Settlement Agreement in the event a later breach occurs by the Debtor; there may be an economic downside as breaches of contracts assumed post-petition which yield damages create administrative expense liabilities which are afforded the highest priority.

5.  Second, several aspects of the Settlement Agreement appear to encroach on the claims adjudication process. This is particularly so regarding the fees of the lawyers involved in the state court cases. Paragraphs 14-16 of the Settlement Agreement provide for the payment by the Debtor of legal fees to the attorneys who represented the Debtor, Dr. Engelberg, Eliezer Perr, Debtor board member Milton Pollack and ACCJ-RLT president Jedidiah Perr. Dr Engelberg is listed as a creditor on the Debtor's schedules (Schedule E/F 3.23), as are several of the law firms involved: Debtor's counsel, Koffsky Schwalb, LLC (Schedule E/F 3.18, $321,382.07), Loeb & Loeb, LLP (Schedule E/F 3.19, $150,000), and Weinreb Law Firm, PLLC (Schedule E/F 3.33, $181,395). Though it is unclear why, Dr. Engelberg's counsel Livingston & Howe, LLP is not listed on Schedule E/F, but the Settlement Agreement provides for payment of their legal fees as well. Per the Settlement Agreement, all these lawyers' fees will be determined via an application to be made to New York State Supreme Court, Nassau County with the litigants barred from objecting to the fee applications other than with respect to the reasonableness of specific items of time charges and expenses. *See* Settlement Agreement, ¶¶ 14(c), 15. Thus, if the Settlement Agreement is implemented, these unsecured creditors' claims will wind up being adjudicated outside of the claims adjudication process, in a setting where all creditors are not present, and where many varieties of objections cannot be made.

6.  Similarly, the Settlement Agreement also intrudes into the claims adjudication process by releasing claims against a laundry list of potential defendants. *See* Settlement Agreement, ¶¶ 17-19. This release would handcuff the bankruptcy process and prevent these claims from being brought on behalf of the Debtor

7.  The application fails to acknowledge these intrusions into the claims adjudication process or to present any analysis as to why it is in the best interests of creditors to

enter proceed in this manner. If Debtor regards this Settlement Agreement as the linchpin to moving the Chapter 11 forward, there ought to be a full explanation of the process, how it impacts the administration of the estate, and why it is to the advantage of creditors.

8. Procedurally, it does seem that if the Debtor is serious about proceeding to implement the Settlement Agreement, the Debtor's motion should be asking for additional relief.

9. By its terms, the Settlement Agreement requires review by the New York State Office of the Attorney General ("OAG"), and approval by New York State Supreme Court, Nassau County. This obviously requires that counsel be engaged to interface with OAG, and to file the necessary application to the court. In addition, approval by the Superior Court of New Jersey may also be necessary since the Settlement Agreement involves the merger of a New York not for profit entity with a New Jersey not for profit entity. Accordingly, besides moving to assume the Settlement Agreement, the Debtor should be moving to retain counsel to accomplish these necessary requirements.

10. Approving the assumption of the Settlement Agreement without approving the retention of special counsel to carry out that task would achieve nothing. Indeed, Debtor asking for authorization to assume the Settlement Agreement without asking for permission to retain counsel suggests that Debtor might not really be serious about proceeding with the Settlement Agreement, and was simply trying to use the purported desire to assume the Settlement Agreement, expressed in an anemic motion, to deflect the myriad conflicts of interest raised in the Motion to Appoint a Chapter 11 Trustee by filing the Motion to Assume on Memorial Day the night before the hearing on the trustee motion.

11. Similarly, if Debtor is serious about proceeding to implement the Settlement Agreement, then Debtor must also move to lift the automatic stay to permit the parties to process

the Settlement Agreement through the OAG, the New York State court, and the Superior Court of New Jersey if necessary. Moving to assume the Settlement Agreement without simultaneously moving to lift the stay is similarly disingenuous. Here, the Debtor has inserted a provision that would lift the stay in the proposed order, but did not mention that relief or the basis for granting it in the application. Thus, it has not been briefed or established that the standard for lifting the stay has been met on this application. One must wonder about the practice of including relief in a proposed order that is not briefed or even discussed in the motion.

12.    Debtor's failure to seek retention of counsel should cause the Court to have substantial misgivings. Debtor will likely respond that it was intending to move for retention and lifting of the stay next. But there is no reason this should proceed piecemeal, particularly given the long notice period for each motion. If Debtor is genuinely interested in assuming the Settlement Agreement, Debtor should move with alacrity and with utmost efficiency.

13.    It must be recalled that this Settlement Agreement was signed on December 7, 2017 and by its terms should have been done being processed and approved by the necessary courts already. Paragraph 3 of the Settlement Agreement provides that:

> ACCJ and NJ Center agree to take all necessary steps to ensure compliance with such legal requirements, including preparing necessary filings with the New York State Attorney General and/or the Supreme Court of New York State, and obtaining all required approvals, and to use reasonable best efforts to obtain all necessary third party approvals or consents that may be required.

*Id.* Further, as part of the process of obtaining OAG approval of the Settlement Agreement, ¶ 6 requires the Debtor to reconstitute its board (¶ 6(a)), to establish an Audit and Compliance Committee of the Board composed of three independent directors (¶ 6(b)), and to establish a reserve fund for claim contingencies (¶ 6(c)). The Debtor did not do any of these things that it was required to do, and instead its purported board secretly authorized filing of a Chapter 11

petition on January 4, 2018 (Dkt. 8). It is therefore unclear what the Debtor means when it says it wants to assume the Settlement Agreement. Who are the new board members? Who are the members of the Audit and Compliance Committee? Where is the reserve fund for future contingencies?

14. Debtor did nothing about the Settlement Agreement for nearly three months before the petition was filed, and then did nothing about it for two more months post-petition. When Debtor filed its petition and then when it filed its initial schedules, the existence of the Settlement Agreement was not even acknowledged. There is no reason why a motion to assume the Settlement Agreement could not have been filed immediately after the petition. Debtor is entirely responsible for this Settlement Agreement not having already been put before the state court(s) to approve or reject already. Accordingly, the Court should be very circumspect regarding Debtor's *bona fides* here.

15. Given the extensive delay already caused by Debtor with respect to the Settlement Agreement, any approval by the Court of the application to assume the Settlement Agreement should be conditioned on simultaneously moving to retain counsel and to lift the stay, and the Court should impose strict deadlines for the procedural steps involved, which Debtor should be required to outline for the Court. The Campuzano Creditors do not wish to spend the next year hearing Debtor's counsel reporting vaguely that Debtor is "working on it." If the Settlement Agreement is going to be assumed, there should be a clear timeline, with no room for shenanigans.

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, the Campuzano Creditors respectfully request that if the motion is granted, it be on condition that the Debtor be required to

simultaneously move to retain counsel and to lift the stay, and the Court should impose strict deadlines for the procedural steps involved, which Debtor should be required to outline for the Court.

Dated: May 31, 2018.

    Respectfully submitted,

    **POLITAN LAW, LLC**
    Mark J. Politan, Esq.
    502 East State Street, #502
    Mendham, New Jersey 07945
    (212) 407-7700
    mpolitan@politanlaw.com

    -and-

    **THE BERKMAN LAW OFFICE, LLC**

    By:    /s/ Robert J. Tolchin
          Robert J. Tolchin

    111 Livingston Street, Suite 1928
    Brooklyn, New York 11201
    (718) 855-3627
    rtolchin@berkmanlaw.com

    *Counsel to Diana Campuzano, Avi Elishis and Gregg Salzman*