| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br><br> TIMOTHY P. NEUMANN, ESQ. [TN6429] <br> BROEGE, NEUMANN, FISCHER & SHAVER, L.L.C. <br> 25 Abe Voorhees Drive <br> Manasquan, NJ 08736 <br> (732) 223-8484 <br> tneumann@bnfsbankruptcy.com <br> *Attorneys for Debtor-in-Possession American Center for Civil Justice, Inc.* | |
| In Re: <br><br> **AMERICAN CENTER FOR CIVIL JUSTICE, INC.,** <br><br> Debtor. | Chapter 11 <br><br> Case No.: 18-15691 <br><br> Judge: Christine M. Gravelle |

**CERTIFICATION OF NEAL M. SHER IN OPPOSITION TO MOTION OF JOSHUA AMBUSH FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE**

Neal M. Sher, an attorney admitted to practice before the Courts of the State of New York, of full age, hereby certifies, as follows:

1. I am the General Counsel of The American Center For Civil Justice, Inc. ("Debtor").

2. I submit this Certification in my capacity as General Counsel, and as a person having personal knowledge of the facts, transactions, and circumstances pertinent to this Chapter 11 case, as well as Debtor's operations and corporate records.

3. This Certification is submitted in opposition to the motion filed by Joshua Ambush ("Movant") for appointment of a Chapter 11 trustee ("Motion").

4. The Chapter 11 case was filed because of prepetition litigation in which three creditors were endeavoring to perfect a lien on the Debtor's most significant asset.

5. Movant alleges that the Debtor, its principals, along with Michael Engelberg, are engaged in fraud and self-dealing in the management of the affairs of the Debtor. This allegation is unsupported by any evidence. More importantly, it flies in the face of approximately 8 years of successive accountings and IRS audits. The Debtor was audited by the IRS for the multiple years

and in the litigation pending in the New York Supreme Court, accountings were prepared for the years 5 years preceding the filing of the Engelberg derivative case.

6. These audits and accountings were not trivial. They were very detailed and followed up by requests for more information and documentation.

7. Annexed hereto are some of the material from both the IRS audits and the court-ordered accountings. These are not exhaustive but provide a view of the type of detailed inquiry that was performed. The cost of this process was enormous. I am not submitting these with the expectation that the Court will engage in an in-depth analysis of the minutiae, but merely to illustrate the breadth and depth of the examinations that the Debtor has undergone. The IRS audit material is grouped together as Exhibits A1 et seq and the court-order accountings as Exhibits B1 et seq.

8. Neither the accountings nor the audits disclosed any improper diversion of funds. The Debtor did not lose its exempt status and no smoking gun was revealed which pointed to any impropriety.

9. The most revelatory aspect of the accountings was the enormous expense that had been incurred in defending the Engelberg derivative litigation. The settlement of that litigation it was hoped would stop that bleeding.

10. The litigation with Engelberg has been provisionally settled, subject to approvals by the Bankruptcy Court and the New York Supreme Court. Movant attacks that settlement as further evidence of fraud, primarily because the settlement, as does every settlement I have seen, provides for releases and indemnifications of the various principals involved.

11. Movant would have this Court believe that the settlement was some clandestine cabal that was being surreptitiously snuck by everyone. Such characterization is either disingenuous or profoundly obtuse. As noted, the settlement requires the approval of the New York Supreme Court with input by the New York Attorney General. It is for the New York Supreme Court and the Attorney General of New York, not the Movant, to determine whether the settlement should

be approved. The terms which the Movant contends are fraudulent are not hidden. They are set forth in plain language in the document itself.

12. The settlement also requires the approval of this Court. If Movant has issues with the settlement, the Debtor has by filing a motion to assume the settlement provided him with an opportunity to voice those concerns. He can object to the assumption of the agreement.

13. The settlement ends the destructive litigation and will enable the Debtor to go about its mission of assisting the victims of terrorism.

14. It is ironic that the Movant has accused the Debtor of fraud. See, Berganzo-Colon v. Ambush, 704 F.3d 33, 36 (1st Cir. 2013).

15. Movants so-called proof of fraud starts at page 7 of his application at paragraph 24. There he simply refers to the disputed allegations made by Michael Engelberg in his complaint in the Engelberg derivative case. Movant then alleges that these are "thirteen entities" somehow related to the Debtor. That allegation is nonsense. He counts the ACCJ of NY and the ACCJ filing to operate in New Jersey as two corporations when in fact they are the same entity. The the same for the New Jersey Center, calling one American Center for Civil Justice, and another American... Religious Liberty and Tolerance. And he does the same for Michael Engelberg's New York Center.

16. He next alleges a $1,000,000 transfer to an entity known as Freedom of Religion, Inc. That was before my time but Jed Perr can confirm that that organization was formed for the purpose of assisting the victims of cults to obtain damages and that the transfer was made at a time when the Debtor was solvent and could easily afford to make such a donation.  And, it happened in 2001!

17. Paragraphs 25 – 31 merely recites more from the proceedings in the litigation in New York, all of which was included in the motion filed by Robert Tolchin to appoint a trustee.

3

18. Movant then alleges that the Debtor's president improperly described the nature of a lawsuit as not being about obtaining money for victims but about fees. Movant does not even read what he quoted because the testimony he refers to states that the dispute was a "residual" of a victim's suit which is in fact accurate. The Debtor is entitled to approximately $794,000 from the Guzman case. That represents part of a dispute over $2 million in legal fees (attorney Efron is entitled to a little over $250,000). There is still a dispute over the remaining approximately $857,000 - several attorneys are claiming entitlement, as is the Debtor. The papers required to obtain an adjudication of this dispute have been submitted but the court has not yet decided on the issue, so we do not know at this point how much the Debtor will obtain from the 857,000. How any of this is evidence of any fraud or impropriety on the part of the Debtor escapes me and Movant's attempt to characterize it as such illuminates only his own grasping for straws.

19. Ap para 43, Movant accuses the Debtor of gross mismanagement, but predicates that allegation entirely on the settlement agreement. Ironically at para 47, he quotes the New York Attorney General who observes that the internecine fighting is diverting assets that could be used to provide services to claimants. The settlement ends that financial drain, and Movant nevertheless attacks the settlement.

20. Movant has filed a proof of claim in the amount of $31,000,000 in this case. The Debtor intends to move to expunge it. As noted by Michael Engelberg's attorneys, Movant's claims "are frivolous and should be dismissed." See Joinder of Michael Engelberg filed 5/22/2018. pg.5, para. 11.

21. Movant alleges that an examiner should be appointed. If that would put to rest the spurious allegations of impropriety that are belied by the expensive and detailed audits and accountings that the Debtor has undergone and could be an alternative to the time and expense of an evidentiary hearing on the appointment of a trustee, it night not be a bad idea. If there is to be an

evidentiary hearing preceded by numerous depositions, then an examiner would just add an additional layer of expense.

22. Since December, 2016, the Debtor has been ordered to spend no money without court approval. No one has accused the Debtor of violating those orders. It should be readily apparent that the Debtor is fully cognizant of its responsibilities to comply with the requirements of the law regarding expenditure of money.  The Debtor is also fully cognizant of its obligations to comply with the Bankruptcy Code and nothing adduced by Movant or Mr. Tolcchin casts any doubt on that simple truth.

23. The motion of Ambush should be denied. He has adduced nothing that has not been raised previously. He has produced not a scintilla of evidence of fraud, misconduct or mismanagement.

I certify that the above statements of fact are true. I acknowledge that if any of the above statements of fact are willfully false, I am subject to punishment.

Dated:  June 5, 2018

*/s/ Neal M. Sher*
NEAL M. SHER

5