| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| Mark J. Politan, Esq.<br>**POLITAN LAW, LLC**<br>88 East Main Street, #502<br>Mendham, New Jersey 07945<br>(973) 768-6072<br>mpolitan@politanlaw.com<br><br>-and-<br><br>Robert J. Tolchin, Esq.<br>**THE BERKMAN LAW OFFICE, LLC**<br>111 Livingston Street, Suite 1928<br>Brooklyn, New York 11201<br>(718) 855-3627<br>rtolchin@berkmanlaw.com<br><br>*Attorneys for Diana Campuzano, Avi Elishis, and Gregg Salzman* | |
| In Re:<br>AMERICAN CENTER FOR CIVIL JUSTICE, INC.<br>Debtor-in Possession. | Case No.:   18-15691 (CMG)<br>Chapter:     11<br>Judge:       Christine M. Gravelle<br><br>**Hearing Date and Time:**<br>**June 26, 2018 at 2:00 p.m.**<br><br>**ORAL ARGUMENT REQUESTED** |

**SUPPLEMENTAL RESPONSE IN LIMITED OPPOSITION OF DIANA CAMPUZANO, AVI ELISHIS, AND GREGG SALZMAN TO DEBTOR'S MOTION TO ASSUME EXECUTORY STIPULATION OF SETTLEMENT**

TO:   THE HONORABLE CHRISTINE M. GRAVELLE

UNITED STATES BANKRUPTCY JUDGE

1.	Diana Campuzano, Avi Elishis and Gregg Salzman (the "Campuzano Creditors") respectfully submit this supplemental response in limited opposition to the Debtor's motion (Dkt. 66) which seeks authorization to assume the executory stipulation of settlement ("Settlement Agreement") which was entered into in New York State court to resolve the derivative litigation styled *Michael Engelberg, derivatively on behalf of the American Center for Civil Justice, Inc. v. Eliezer Perr, Jedidiah Perr, Milton Pollack and American Center for Civil Justice, Religious Liberty and Tolerance, Inc., Defendants, American Center for Civil Justice, Nominal Defendant, and The New York Center for Civil Justice, Tolerance and Values, Inc., Additional Defendant on Counterclaims,* Supreme Court of the State of New York, Nassau County index number 606919/14 ("Derivative Action).

2.	Campuzano Creditors previously submitted limited opposition to that motion (Dkt. 70).

3.	The basis for this supplemental opposition is that today the Campuzano Creditors filed a Motion for an Order Disallowing, Expunging, Reducing and/or Modifying the Claim of the American Center for Civil Justice, Religious Liberty and Tolerance, Inc. (Dkt. 79). This motion will require the listed creditor, American Center for Civil Justice, Religious Liberty and Tolerance, Inc. ("ACCJ-RLT") to submit proof to substantiate the $14,818,844.00 claim which is scheduled as undisputed. That motion is necessary because no proof of any sort whatsoever has been provided to substantiate this alleged debt, and because the claim is listed as undisputed no proof of claim will ever be filed due to the "deemed filed" provision of Bankruptcy Code § 1111(a).

4.	At the 341 meeting Debtor's president Eliezer Perr claimed to be unable to explain this $14.8 million debt:

Q. So the—what you're calling the New Jersey Center is listed as having a claim against the debtor on the petition; is that correct?

A. Yes.

Q. You listed it as $14,818,844?

A. If that's what it says, that's what it says.

Q. And you said that there's an agreement between the debtor and the New Jersey Center?

A. So I understand it, yes.

Q. Who signed that agreement?

A. I don't remember.

Q. Did you sign that agreement?

A. I don't remember, no, I don't remember.

Q. Did that agreement require—

A. I certainly didn't sign it.

Q. Did that agreement require the New Jersey Center to perform some services or do some work?

A. You don't have to—

Q. In order to be entitled to be paid $14 million.

A. I did not negotiate it, I was not involved with it, I can't answer the question.

Q. Did you ever read it?

A. I don't think so.

Q. Did you ever sign it?

A. No, not to my knowledge.

Q. You said the board reaffirmed it in 2013 or so?

A. I was not—I didn't sign it.

Q. Were you at the board meeting where it was reaffirmed?

A. I stepped out.

Q. You stepped out of the meeting, why did you do that?

A. Because I didn't want to run conflict of interest.

Q. Why would there be a conflict of interest?

A. Figure it out yourself.

Q. I'm asking you, sir.

A. I don't know.

Q. You don't know why there would be a conflict of interest?

A. At this moment, no.

Q. Would it be because your son was the control person in the New Jersey Center?

A. Look, this will ride out in court this business. I can't answer the question, I'm not going to answer.

Q. Why aren't you going to answer?

A. Because I don't know.

Q. Is that a false claim that you put on the petition?

A. No, no, it's not.

Q. What?

A. It's not to my knowledge.

Q. How did you come up with the number $14.8 million?

A. Ask our attorney.

Q. Where did that number come from?

A. Ask Mr. Sher, the attorney.

* * *

Q. Mr. Neal Sher made up that number?

A. I don't know if he made that up, he's more knowledgeable than I.

Q. Can you show me where Neal Sher's signature appears on the petition?

A. He's not a board member.

Q. He didn't sign this petition under penalty of perjury, did he?

A. No, he didn't.

Q. You did sir, correct?

A. That's right.

Q. So before you signed the petition under penalty of perjury, did you review the information contained on it and make sure that it was accurate?

A. I did advise my—either the controller—

Q. Answer the question, sir, did you review the information and make sure this was accurate?

A. No, I did not, I assumed it to be so.

Q. So you're saying you have no idea whether the information contained in the petition was accurate. Is that correct, sir?

A. What's your question?

Q. Do you have any idea whether the information contained in the petition is accurate?

JEDEDIAH PERR:    (Inaudible.)

Q. Mr. Jed Perr, please stop talking to the witness.

MR. SPONDER:    We're not taking a break right now.

A. No breaks. Can you repeat your question?

Q. As of today, sir, do you have any idea whether the information contained in the petition is accurate?

A. I assume all the papers here are accurate and that's why they're signed as such.

Q. What did you do to verify the accuracy of the number $14,818,844 listed as the claim for the American Center for Civil Justice Religious. It's cut off, but the New Jersey Center.

A. I trust the accountant or the controller or my lawyer.

Q. Did you actually talk to an accountant or a lawyer or a controller about that number before you signed the petition?

A. I consulted everything here and I was told it's accurate.

Q. Who did you consult about that $14.8 million number?

A. I don't recall that particular thing.

Q. That's a little thing, $15 million, right? Win some, lose some.

A. You know.

Q. Did you speak to Mr. Sher about that number?

    A.    I can't—I do not know.

    Q.    You do not know? So as you sit here today, is it a fact that you cannot give us even the general contours of where that $14.8 million number comes from.

    A.    I cannot.

(Dkt. 43-15, Tr. of 341 meeting, pp. 134-40).

5.    Following the 341 meeting, Eliezer Perr docketed a certification in which he claimed that at the 341 meeting that he "was unable to recall certain things and therefore unable to answer some of the questions" in order to "fill in the gaps left by my inability to recall everything I was asked." (Dkt. 38, ¶¶ 3-4). Nothing in that certification addresses how the Debtor arrived at the amount of $14,818,844.00 as being owing to the Claimant.

6.    If the ACCJ-RLT is unable to submit proof sufficient to substantiate this claim, presumably the motion will be granted and the claim will be expunged, or possibly reduced or modified.

7.    If the listed claim of the ACCJ-RLT is expunged, reduced, or modified, the value to the Debtor of assuming the Settlement Agreement will be affected. Indeed, one of the biggest selling points put forward by the Debtor for why the Settlement Agreement should be assumed is that the Settlement Agreement will merge Debtor with the ACCJ-RLT, thereby making the alleged debt to the ACCJ-RLT evaporate. But if the claim of the ACCJ-RLT is expunged, there will be no benefit to the Debtor at all.

8.    Accordingly, it would seem that addressing assumption of the Settlement Agreement before seeing whether there is any substantiation of this claim would be putting the cart before the horse.

## CONCLUSION

**WHEREFORE**, for all of the foregoing reasons, the Campuzano Creditors respectfully request that decision on this motion be deferred until the Court and the parties have some information about the value of the claim of the ACCJ-RLT.

Dated: June 6, 2018.

                                                Respectfully submitted,

                                                **POLITAN LAW, LLC**
                                                Mark J. Politan, Esq.
                                                502 East State Street, #502
                                                Mendham, New Jersey 07945
                                                (212) 407-7700
                                                mpolitan@politanlaw.com

                                                -and-

                                              **THE BERKMAN LAW OFFICE, LLC**

                                              By:     /s/ Robert J. Tolchin
                                                     Robert J. Tolchin

                                              111 Livingston Street, Suite 1928
                                              Brooklyn, New York 11201
                                              (718) 855-3627
                                              rtolchin@berkmanlaw.com

                                              *Counsel to Diana Campuzano, Avi Elishis and Gregg Salzman*