**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Douglas T. Tabachnik, Esq.
LAW OFFICES OF DOUGLAS T. TABACHNIK, P.C.
63 West Main Street, Suite C
Freehold, NJ 07728
Tel: 732-780-2760
Fax: 732-780-2761
dtabachnik@dttlaw.com

  - and -

David D. Howe, Esq. (admitted *pro hac vice*)
Jeffrey E. Livingston, Esq. (admitted *pro hac vice*)
LIVINGSTON HOWE LLP
747 Third Avenue, 20th Floor
New York, NY 10017
Tel: 212-986-7887
david@livingstonhowe.com
jeff@livingstonhowe.com

*Attorneys for Michael Engelberg*

| In re: | Case No.: 18-15691 (CMG) |
|---|---|
| American Center for Civil Justice, Inc., | Chapter: 11 |
| Debtor. | Judge: Christine M. Gravelle |

**JOINDER OF MICHAEL ENGELBERG IN MOTION OF DIANA CAMPUZANO, ET AL., FOR AN ORDER DISALLOWING, EXPUNGING, REDUCING AND/OR MODIFYING THE CLAIM OF THE AMERICAN CENTER FOR CIVIL JUSTICE, RELIGIOUS LIBERTY AND TOLERANCE, INC.**

TO:   THE HONORABLE CHRISTINE M. GRAVELLE
      UNITED STATES BANKRUPTCY JUDGE

Michael Engelberg, by and through his undersigned counsel, hereby joins in the motion (Dkt. No. 79) of Diana Campuzano, Avi Elishis and Gregg Salzman for an order disallowing, expunging, reducing and/or modifying the claim of The American Center For Civil Justice, Religious Liberty And Tolerance, Inc. (the "Motion"), and in support thereof, respectfully states:

1

1. The Debtor ("ACCJ") has scheduled, as uncontested, a claim of The American Center For Civil Justice, Religious Liberty And Tolerance, Inc. ("ACCJ-RTLI" or "New Jersey Center") in the amount of approximately $14.8 million. Dkt. No. 46, p. 6, at Sch. F, item 3.1.

2. The circumstances giving rise to this claim have been among the issues in a hotly-contested litigation in the New York State Supreme Court, Nassau County, captioned *Engelberg v. Perr*, Index Number 606919/2014. This case is described in Dkt. No. 58, the Joinder of Michael Engelberg in Motion of Diana Campuzano, et al., to Appoint a Chapter 11 Trustee.

3. Dr. Engelberg's position, in *Engelberg v. Perr*, is that the New Jersey Center (run by Jed Perr) is an alter ego of the Debtor (whose President, Eli Perr, is Jed Perr's father), and that the alleged debt of the Debtor to its alter ego is based on a phony contract and is fraudulent. In his decision dated November 30, 2017, denying the New Jersey Center's motion to dismiss Dr. Engelberg's complaint against it, on the basis of ample documentary evidence placed before him, Justice Stephen A. Bucaria characterized the purported 2007 Agreement between the Debtor and the New Jersey Center as "infected by fraud" (at page 6). See Dkt. No. 58 at ¶ 7, referring to that decision, which has been filed as Dkt. No. 43-11 (Exh. I to motion for Ch. 11 Trustee).

4. However, as this Court is also aware, all claims in that litigation have been settled, subject to certain conditions, pursuant to a Stipulation of Settlement, and the Debtor has moved this Court for an order authorizing it to assume that agreement (Dkt. No. 66). Among other terms of settlement, the Debtor and the New Jersey Center agreed to merge (into the Debtor) and appoint a new, independent Board of Directors.

5. Should the settlement be approved and implemented, any inter-party debts of these entities would be erased and folded into merged assets and liabilities. On the other hand, should the settlement not be approved, or should the merger, for any other reason, fail, then

certain claims at issue in *Engelberg v. Perr* would have to proceed to decision – including, importantly, Dr. Engelberg's well-founded claim that the contract upon which the New Jersey Center's claim in this bankruptcy case is founded was created as a cover-up, was backdated and is fraudulent.

6.  These circumstances were amply documented in Dr. Engelberg's opposition to the New Jersey Center's motion to dismiss in *Engelberg v. Perr*. We respectfully refer the Court to Dr. Engelberg's memorandum of law filed in that case on August 30, 2017 ("MOL"), a copy of which is already in the record of this proceeding (Dkt. No. 58-3). The documentary evidence, as filed with the Nassau County court, is accessible on-line.[1] In order not to unduly burden the record of this proceeding, we will only submit herewith a few key items of evidence. The motion record showed that:

   a) To the extent Jed Perr was acting on behalf of the New Jersey Center, he largely concealed that role, while holding himself out, in letters on the Debtor ACCJ's letterhead, e-mails using an ACCJ domain name, and in agreements, as a de facto officer or key employee of ACCJ. *See* MOL at 4-6, 12. Moreover, in 2014 he attempted to confuse claimants regarding which entity they were dealing with, by asking certain claimants (the Brewer and Valencia groups) to sign a "revised" Claimant and Center Agreement that identified the entity party as "The American Center for Civil Justice, Inc., a corporation incorporated in the State of New Jersey." There is no such corporation. This was obviously a deceptive practice intended to "palm off" the New Jersey Center (ACCJ-RLTI) as the Debtor (ACCJ), whereby the New Jersey Center could, in essence, steal a corporate opportunity of the Debtor. *See* Amended Verified Derivative Complaint filed March 31, 2017 in *Engelberg v. Perr*, previously filed in this proceeding as Dkt. No. 33-2, at ¶¶ 189-190, and Exhibit 35 thereto (agreement sent by Jed Perr to Brewer plaintiffs in May 2014).[2]

---

[1] https://iapps.courts.state.ny.us/webcivil/FCASMain, Index Search 606919/2014, document numbers 370 and following.

[2] An additional fraud alleged by Dr. Engelberg in that case is that, in 2014, the Debtor and the New Jersey Center attempted to rewrite the financial terms of the arrangement with claimants, by

3

b) In 2009, four checks in the total amount of $2,010,000, made out to ACCJ by members of the Collett family based on their collection of $10 million from Libya, were never deposited to ACCJ's account, but instead were, in essence, handed over to Jed Perr and deposited to the New Jersey Center's accounts and reported as New Jersey Center revenue on its tax returns. MOL at 6-7. The Collett documents, filed in *Engelberg v. Perr* as NYSCEF Doc. No. 375, are submitted herewith as <u>Exhibit A</u>.

c) Similarly, in late 2009/early 2010, three checks drawn to the order of ACCJ by another Libya claimant, Sam Israel Fischel, were also never deposited to the accounts of ACCJ, but instead were taken into possession by Jed Perr and deposited to the accounts of the New Jersey Center and declared as its revenue on its tax returns. MOL at 7-8. The Fischel documents, filed in *Engelberg v. Perr* as NYSCEF Doc. Nos. 382, 394, 395, 396, 397, and 408, are submitted herewith, together, as <u>Exhibit B</u>.

The income from the Collett and Fischel recoveries is reflected in the 2009 tax return of the New Jersey Center (*Engelberg v. Perr* Doc. No. 376, <u>Exhibit C</u> herewith) and does not appear in the 2009 tax return of the Debtor (*Engelberg v. Perr* Doc. No. 385, <u>Exhibit D</u> herewith). This income is also reflected in the "accounting" materials filed by the New Jersey Center in *Engelberg v. Perr*. Docket number 59-3, previously filed in this case, is a ledger showing activity in the New Jersey Center's accounts. (This was filed in *Engelberg v. Perr* under cover of an affirmation of its counsel, which is in the record at Dkt. No. 64-12.) While this ledger is lacking in many respects, the figures and notations make clear that the Collett and Fischel monies were deposited to the New Jersey Center's accounts.

d) A third illicit diversion of funds occurred starting in 2011, following a July 15, 2011 e-mail from Jed Perr to the DLA Piper law firm, in which (quoting Justice Bucaria's decision) Jed "falsely stated that the New Jersey Center's tax ID number was the tax ID number for ACCJ." Order entered November 30, 2017, at p. 6 (Dkt. No. 43-11). See <u>Exhibit E</u> herewith (copy of this e-mail as retrieved from Dr. Engelberg's files.) Thereafter, the New Jersey Center received directly from DLA Piper approximately $1.6 million, representing ACCJ's share in collections effected by DLA Piper on behalf of ACCJ claimants. These monies were also reported as New Jersey Center revenue. *See* MOL at 8-10.

e) The known documents and factual circumstances strongly indicate that the 2007 Agreement did not exist prior to 2013, but instead was created in 2013 and backdated in order to facilitate an explanation to the IRS

---

asking claimants to agree to an increase in the fee owed, from 20% of any recovery, to 36%. *See* Amended Verified Derivative Complaint at ¶¶ 162-164, 182-190, 213-214.

    concerning how ACCJ revenues wound up in the coffers of the New Jersey Center. Not a single document has been produced in the Nassau County litigations that refers to the agreement at any time prior to 2013, when the agreement and related board minutes, both purportedly dated in April 2007, first surfaced in connection with the IRS audit. *See* MOL at 13-16.

 f) Although minutes of an ACCJ board meeting held in September 2013 state that Neal Sher described a relationship between ACCJ and ACCJ-RLT, "a New Jersey not-for-profit," concerning collections, and that the two entities entered an agreement in 2007, the Debtor's Board cannot properly be said to have ratified the agreement. The minutes do not reflect that the board was informed of Jed Perr's involvement, or of the diversion or transfer of millions of dollars from ACCJ to the New Jersey Center, or of other material information. Accordingly, there could be no legally significant ratification. Ironically, the minutes indicate that Mr. Sher recommended that ACCJ "absorb NJ Center's operations, agreements and staff along with its current *very substantial assets*" – *i.e.*, a merger. (Emphasis added). The minutes do not reveal that the New Jersey Center had no assets other than those illicitly diverted to it from ACCJ. MOL at 16-18.

7. In view of the issues litigated in *Engelberg v. Perr*, and the fact that the settlement has not yet been approved, the Debtor's decision to list the New Jersey Center's claim as "undisputed" is inconsistent with the settlement of that dispute. Listing the claim as undisputed allows father Eli and son Jed to finesse approval of the claim without a proper showing of its validity. Indeed, should the agreed settlement fail, and the merger not take place, the New Jersey Center (and Jed Perr) would be in a position to walk away with millions of dollars. This would be to the severe detriment of the Debtor's other creditors.

8. The New Jersey Center should be required, as any other creditor, to file and prove its claim. This is entirely appropriate for a claim in excess of $14 million, and in view of the history of litigation over this very claim and the terms of settlement. If it turns out that the claim need not be proved, due to consummation of the settlement and a merger of the two entities, nothing will be lost.

9. By reason of the foregoing, Dr. Engelberg joins in the Motion, with the caveat that he has no objection to the New Jersey Center's filing a Proof of Claim, subject to proof.

Dated: July 24, 2018

LAW OFFICES OF
DOUGLAS T. TABACHNIK, P.C.

By: s/ Douglas T. Tabachnik
    Douglas T. Tabachnik

LIVINGSTON HOWE LLP

By: s/ David D. Howe
    David D. Howe
    Jeffrey E. Livingston

*Attorneys for Michael Engelberg*