| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J LBR 9004-1(b)<br><br>**NORRIS McLAUGHLIN, P.A.**<br>Morris S. Bauer, Esq.<br>400 Crossing Boulevard, 8th Floor<br>P.O. Box 5933<br>Bridgewater, New Jersey 08807<br>(908) 722-0700<br>msbauer@norris-law.com<br><br> - and -<br><br>**LIVINGSTON HOWE LLP**<br>David D. Howe, Esq. (admitted *pro hac vice*)<br>Jeffrey E. Livingston, Esq. (admitted *pro hac vice*)<br>747 Third Avenue, 20th Floor<br>New York, NY 10017<br>Tel: 212-986-7887<br>david@livingstonhowe.com<br>jeff@livingstonhowe.com<br><br>*Attorneys for Michael Engelberg* | |
| In Re<br><br>**AMERICAN CENTER FOR CIVIL JUSTICE, INC.,**<br><br>Debtor. | CHAPTER 11<br><br>CASE NO.: 18-15691/CMG<br><br>Judge: Hon. Christine M. Gravelle |

**MEMORANDUM OF LAW OF MICHAEL ENGELBERG (1) IN OPPOSITION TO DEBTOR'S MOTION TO QUASH SUBPOENAS SERVED ON CAPLIN & DRYSDALE AND LOEB & LOEB, AND (2) IN SUPPORT OF CROSS-MOTION TO COMPEL**

Michael Engelberg ("Dr. Engelberg"), a creditor and party-in-interest in the Chapter 11 Case of the American Center for Civil Justice, Inc., the above-captioned debtor-in-possession (the "Debtor" or "ACCJ"), by and through his counsel, Norris McLaughlin, P.A. respectfully submits this memorandum of law (1) in opposition to the Debtor's motion (Docket No. 327) to quash subpoenas served on Caplin & Drysdale, Chartered ("Caplin & Drysdale") and Loeb & Loeb LLP

("Loeb & Loeb") (the "Subpoenas"), and (2) in support of his cross-motion to compel compliance with the Subpoenas. This opposition and cross-motion is supported by the Certification of Jeffrey E. Livingston, Esq. and the exhibits thereto ("Livingston Cert.").

## JURISDICTION

The Court has jurisdiction over the Cross-Motion pursuant to 28 U.S.C. §§157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory predicate for the relief requested in the Cross-Motion is Rule 45 of the Federal Rules of Civil Procedure, made applicable in this proceeding by Bankruptcy Rule 9016.

## BASIS FOR RELIEF

Dr. Engelberg opposes the motion to quash, and requests an order compelling disclosure, on the grounds that (1) the information sought clearly is relevant; (2) the Debtor has no standing to object to the subpoenas on grounds of undue burden; and (3) the Debtor has not adequately specified grounds for asserting the attorney-client privilege (indeed, has admitted that a good many of the documents sought might not be privileged); has waived the privilege with respect to the subject of the IRS audit; and is not entitled to invoke the privilege, under the crime-fraud exception.

**1. Background.**

An evidentiary hearing in this case is scheduled for February 13, 2019, on motions to expunge the claim of The American Center for Civil Justice, Religious Liberty And Tolerance, Inc. ("RLT"). Dr. Engelberg intends to establish, among other things, (1) that RLT's supposed claim is based principally on a fraudulent agreement, to wit, the 2007 Agreement; (2) that Eli Perr and his son, Jed Perr, orchestrated a series of illicit diversions of ACCJ funds to RLT, totaling more than $4 million; (3) that Eli and Jed Perr perpetrated various deceptions to facilitate the

diversions and to conceal them; and (4) that in connection with an IRS audit, after initially concealing the diversions, Eli and Jed Perr concocted the 2007 Agreement, in an effort to cover up and explain away the diversions, and engaged in further deceptions, including false and misleading statements to the IRS, made through ACCJ's counsel, with a view to misleading the IRS.

The Subpoenas (Livingston Cert., Exhibits A and B) seek production of documents relating to the IRS audit. Starting in early 2012, ACCJ was represented in the audit by JoAnn Luehring, Esq., an attorney at Roberts & Holland. However, around the end of 2012, ACCJ discharged Ms. Luehring and replaced her with Marcus Owens, Esq., who was then a partner at Caplin & Drysdale. The audit work was completed by Mr. Owens and Caplin & Drysdale in 2013 and early 2014. In 2015, Mr. Owens moved to Loeb & Loeb, where he has continued to represent ACCJ.

Before the audit response was completed and filed, Caplin & Drysdale provided Dr. Engelberg and his counsel with two drafts of a letter responding to the audit inquiries. The first draft, dated August 13, 2013, referred to a 2007 Agreement between ACCJ and RLT. Livingston Cert. ¶ 5 and Exhibit C, at the 2nd page of the Exhibit to letter (page 12 of the PFD file). As detailed in a September 17, 2013 e-mail from Dr. Engelberg's counsel, Mr. Bach, to Caplin & Drysdale, this was the first time Dr. Engelberg had heard of this agreement. Livingston Cert., Exhibit D. The August 13, 2013 draft stated that the "son of the Executive Director of ACCJ" is the Executive Director of RLT (referred to as the "Center"). It also stated that the 2007 Agreement was approved at a Board meeting at which the "Executive Director [Eli Perr] recused himself from the discussion of, and vote to approve, the agreement." Livingston Cert., Exh. C, p. 12 of PDF.

Caplin & Drysdale provided a revised draft of the letter to Dr. Engelberg's counsel, dated December 12, 2013, in which the explanations of the supposed ACCJ Board approval of the 2007 Agreement had been changed. Livingston Cert. ¶ 7 and Exhibit E. The second draft states, in a

footnote, that one of RLT's "Board members is a son of ACCJ's present Executive Director." Page 7, fn. 2. In the footnote, it is further claimed that when the Board approved the 2007 Agreement, "ACCJ's current Executive Director was neither an official nor a Board member of the ACCJ and therefore did not vote on the approval of the Agreement."

The final version of the letter that was actually sent to the IRS, dated December 16, 2013, was not provided to Dr. Engelberg at the time, or in discovery in the state court proceedings, but was disclosed by ACCJ in this proceeding. Livingston Cert. ¶ 8 and Exhibit F ("Final IRS Letter"). The Final IRS Letter included, as an attachment, a "Declaration Under Penalties of Perjury" signed by Eli Perr (by electronic signature) on behalf of ACCJ (the "IRS Declaration") (last page of Exh. F). In the IRS Declaration, Eli Perr declares that he had examined the information contained in the submission and that the information "contains all the relevant facts" and "such facts are true, correct and complete." The Final IRS Letter states that the 2007 Agreement was approved at an ACCJ Board meeting on April 1, 2007 and further states that "[a]t that time ACCJ's current director [Eli Perr] was neither an official nor a Board member of the ACCJ and therefore did not vote on the approval of the Agreement." Exh. F, p. 13, fn. 3.

The representation that Eli Perr was neither an official nor a Board member of ACCJ on April 1, 2007, is belied by documentary evidence. For example:

- In a declaration made under penalty of perjury dated April 13, 2009 (the "2009 Declaration"), Eli Perr stated he had "served on the Board of Directors of The American Center for Civil Justice . . . since its formation in 1996. I have at various times served as the President of the Center, and I currently serve on its Board." This declaration was filed in the U.S. District Court, District of Columbia, in *American Center for Civil Justice v. Joshua M. Ambush*, No. 1:09-cv-233-PLF. Livingston Cert., Exhibit G. (Emphasis added.)

- Board minutes produced by ACCJ states that at a Board meeting on March 1, 2007, "officers of the corporation" were nominated and elected to serve a term of two years. Among the nominees and elected officials was Eliezer

4

Perr, as "Secretary/Treasurer." These minutes put the lie to the representation that Eli Perr was not an "official" of ACCJ in 2007 when the 2007 Agreement was supposedly approved. Livingston Cert., Exhibit H.

Both the draft letters to the IRS, and the Final IRS Letter, used the 2007 Agreement as a misleading explanation for the diversion of the Collett monies ($2.1 million) to RLT. They also understate the amount awarded to the "Franqui" claimants, in order to draw attention away from the diversion of an additional $600,000 from Sam Fischel to RLT.[1]

The representations in the Final IRS Letter that Eli Perr was "neither an official nor a Board member" of ACCJ are material. They were designed to validate the 2007 Agreement and to explain away omissions in ACCJ's Form 990's that failed to disclose the diversion of funds from ACCJ to RLT. Dr. Engelberg contends that disclosure of these transfers was required due to the familial relationship between the principals of the two organizations. The documentary evidence contradicts or at minimum calls into question the veracity of those representations and strongly suggests material misstatements were made in the Final IRS Letter. From this it can readily be concluded that it was the deliberate intention of Eli and/or Jed Perr to mislead the IRS concerning their diversion of funds from ACCJ and their failure to properly report it. Neal Sher's conduct and/or possible participation in this scheme is also called into question, given evidence that he played a key role in supplying information to Caplin & Drysdale in connection with the audit.

Thus, for good reason, the Subpoenas seek documents that will shed light on what Caplin & Drysdale was told, and by whom, about:

(1) the existence, or not, of the so-called 2007 Agreement, and how, when, and by whom that agreement came into Caplin & Drysdale's possession;

(2) the composition of ACCJ's board of directors at certain times, specifically in April 2007 when the 2007 Agreement was allegedly made and approved;

---

[1] The Franqui claimants asserted claims against Libya. Most of them were represented by Joshua Ambush, except Sam Fischel, who was represented by Paul Gaston.

5

 (3) whether Eli Perr was an "official" or officer or director at relevant times, particularly in 2007 when the agreement was allegedly made and approved; and

 (4) what happened to ACCJ's share of the Collett and Fischel monies.

The Subpoenas also seek documents that will show whether, and by whom, Caplin & Drysdale was provided with:

 (5) Eli Perr's 2009 Declaration; and

 (6) the March 1, 2007 ACCJ Board minutes.

If these latter two documents were deliberately not provided to Caplin & Drysdale by ACCJ, this would be a material omission and, we submit, part of a scheme to mislead the IRS.

The subpoena to Loeb & Loeb seeks the same documents, since the firm may have come into possession of the documents as a result of Mr. Owens' move to that firm.

**2. Legal Standards Applicable to ACCJ's Motion to Quash.**

Civil Rule 45(d)(3)(A) provides in pertinent part that a subpoena should be quashed or modified if it "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Moreover, "[d]iscovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b)." *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Becton, Dickinson and Co.*, Jan. 30, 2018, 2018 WL 627378 (D.N.J. 2018), citing *OMS Investments, Inc. v. Lebanon Seaboard Corp.*, 2008 WL 4952445 (D.N.J. Nov. 18, 2008). Under Rule 26(b)(1), parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense."

The Debtor asserts (i) that compliance with the Subpoenas would impose an undue burden; (ii) that the Subpoenas seek material that is not relevant; and (iii) that any responses would breach the attorney-client privilege. None of these grounds for objection can be sustained, and the Court should order compliance with the Subpoenas.

*(a) ACCJ Lacks Standing to Object to the Subpoenas on the Ground of Undue Burden.*

"[T]he general rule is that only the person to whom the subpoena is directed has standing to object to its issuance. An exception to that rule occurs where the challenging party asserts a personal right or privilege with respect to the materials subpoenaed." *Public Service Co. of Oklahoma v. A Plus, Inc.*, 2011 WL 691204 at *2 (W.D. Okla. Feb. 16, 2011) (citations omitted). Thus, courts have permitted a party to move to quash a subpoena served upon its (non-party) attorney, on the ground of attorney-client privilege. However, "[e]ven if a party has standing to challenge a subpoena directed to a third party on privacy or privilege grounds, he <u>may not challenge that subpoena on the grounds that the information imposes an undue burden</u> on the subpoenaed party." *Id.* at *5 (citations omitted) (emphasis added).

Under this rule, the Debtor lacks standing to argue that responding to the Subpoenas would create an undue burden on the law firms. It should also be noted that the Debtor has not made any factual showing of an undue burden.

*(b) The Requested Documents Are Undoubtedly Relevant and Discoverable.*

"The party seeking discovery has the burden of showing that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000), *citing Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 105 (D.N.J. 1990). "Relevancy is defined as 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case[.]'" *Eisai Co. v. Teva Pharms. USA, Inc.*, 2009 WL 4666937 (D.N.J. Dec. 8, 2009), *citing Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

The Debtor's motion does not articulate any basis for its relevance objection, and that objection clearly is groundless. For the reasons discussed above in the background section, the

requested documents are directly relevant to the authenticity and validity of the 2007 Agreement, and the Perrs' illicit diversions of ACCJ funds, and their efforts to conceal the transactions and to mislead the IRS about them, by means of the fraudulently created 2007 Agreement, and thus to the issues to be tried on the expungement motion.

### (c) ACCJ's Attorney-Client Privilege Objection Has Not Been Asserted Properly, Has Been Waived, and Has Been Vitiated By the "Crime-Fraud" Exception.

"The attorney-client privilege protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client." *In re Grand Jury*, 705 F.3d 133, 151 (3rd Cir. 2012). The attorney-client privilege attaches "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 71 (1st Cir. 2011) (citations omitted). "[T]he party seeking to invoke the attorney-client privilege must carry the devoir of persuasion to show that it applies to a particular communication <u>and has not been waived</u>." *Id.* (citations omitted) (emphasis added).

The first defect in the Debtor's privilege objection is the complete lack of particulars. Debtor rests on a bald, conclusory statement that "[a]lthough there may be documents in the possession of the law firms that are not privileged, the scope of the demand for document is broad and perforce will include documents that are privileged." Debtor's Memo, p. 2. No other showing is made. This is not a sufficient showing to support a motion to quash.

> Whatever quantum of proof is necessary to satisfy this obligation, <u>a blanket assertion of privilege is generally insufficient</u>. Determining whether documents are privileged demands a highly fact-specific analysis—one that most often requires the party seeking to validate a claim of privilege to do so <u>document by document</u>.

8

*In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d at 71 (emphasis added). The Debtor has completely failed to provide such an analysis. The proper course for ACCJ would have been to instruct the law firms to produce the documents that it does not contend are privileged, and to produce a privilege log with respect to those documents it contends are privileged, which documents could be examined by the Court in camera.

Second, we contend that the Debtor has waived the privilege, both by including in its communications with the law firm a person who is outside of the ambit of confidentiality, and by permitting the disclosure and use of attorney-client communications for its advantage in this proceeding.

Debtor's Exhibit D (Doc. No. 327-5) consists of two invoices from Caplin & Drysdale relating to the IRS audit work. The first invoice, dated May 16, 2013, includes several time entries reflecting meetings and e-mails which included the involvement of Jed Perr. See entries for April 9, 18, and 19, 2013. Other entries are ambiguous but may also refer to the involvement of Jed Perr. These time entries only confirm other evidence that Jed Perr was closely involved in working on ACCJ's audit response. *See, e.g.*, Livingston Cert. ¶ 11 (referring to Exhibit I, Jed Perr deposition transcript, pages 246-261), ¶ 12 (referring to Exhibit J, Oct. 24, 2012 email from JoAnn Luehring, Esq. to Jed Perr), and ¶ 13 (referring to Exhibit K, March 25, 2012 email from Jed Perr to Dr. Engelberg, requesting comments on a March 28, 2012 draft letter to JoAnn Luehring). Jed Perr has insisted in this proceeding (and before) that he is not a part of ACCJ. *See* Livingston Cert., Exhibit L at ¶¶ 14, 27 (Jed Perr Supplemental Certification dated August 21, 2018). Of course, Dr. Engelberg has contended for years that Jed Perr is a *de facto* officer of the Debtor and that the Debtor and RLT are alter egos of one another. The Debtor cannot have it both ways. If,

as the Debtor has contended, Jed is not a *de facto* officer of ACCJ, and RLT is not the alter ego of ACCJ, then Jed's involvement in the IRS audit of ACCJ waives the privilege.

In addition, both Jed Perr and RLT, and Neal Sher and ACCJ, have selectively relied in this proceeding, as part of their litigation strategy, on attorney-client communications made in connection with the IRS audit. Livingston Cert., Exhibit M is a March 27, 2012 draft of a letter from ACCJ, by Michael Engelberg, to JoAnn Luehring, Esq. (ACCJ's first tax counsel, who was later dismissed), concerning the IRS audit. (This is a different version of Livingston Cert, Exhibit K.) This letter was attached to a Certification of Jed Perr filed in this proceeding by RLT (Doc. No. 206-18), and a copy of this document with handwritten notes was produced by RLT on August 30, 2018. Livingston Cert., ¶ 15. Jed Perr was questioned about this letter at his deposition, and none of the parties' counsel raised a privilege objection. *Id.* The draft letter plainly states in the opening paragraph that its contents are "attorney client privileged and intended only for recipient." It was evident that this letter was deployed by RLT as part of a joint strategy with the Debtor to characterize the letter as Engelberg's work exclusively (see transcript, Exhibit I, at p. 258), when the truth is that Jed Perr was the person in possession of the facts relevant to the Collett monies and was one of the letter's creators (see Exh. K). In addition, in the Debtor's opposition to Dr. Engelberg's motion to quash, Mr. Sher put in the motion record the email from Ms. Luehring to Jed Perr mentioned above (Docket No. 318-1) (Livingston Cert., Exh. J). The Debtor argued that this email proved Dr. Engelberg's knowledge of the transfers to RLT. Assuming *arguendo* that this communication was privileged, its offensive use constitutes a waiver.

The foregoing evidence plainly shows that the Debtor has waived the attorney-client privilege with respect to the IRS audit, both by including Jed Perr, ostensibly not a part of the

Debtor, in its communications with counsel, and by its conscious use of attorney-client communications concerning the IRS audit for adversarial purposes in this proceeding.

Finally, under the "crime-fraud exception" to the attorney-client privilege, "the party seeking to overcome the privilege … 'must make a prima facie showing that (1) the client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud.'" *In re Grand Jury, supra*, 705 F.3d at 151 (citation omitted). In view of the evidence outlined above, it is difficult to avoid the conclusion that the Debtor intended to present a false and misleading response to the IRS audit, and used its attorneys to do so, and that this was part of the overall cover-up of the fraudulent and illicit transfers of ACCJ assets to RLT. *See also* Engelberg Certification dated January 25, 2019 at paragraph 13 (Docket No. 323) (marked as Livingston Cert., Exhibit N). Furthermore, knowingly making false statements to government officials or endeavoring to mislead them as to a material fact by scheme or trick is a federal crime. 18 U.S. Code § 1001. In such circumstances, the crime-fraud exception applies. The privilege should thus be avoided and disclosure compelled.[2]

---

[2] We note that analysis of the crime-fraud exception "is not necessary … until the privilege itself has been attached." *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d at 69. Accordingly, if the Court finds that the privilege has not been properly asserted or has been waived, it need not reach this issue.

11

## CONCLUSION

For the foregoing reasons, Dr. Engelberg respectfully requests that the Court deny the Debtor's motion to quash the Subpoenas, grant the cross-motion to compel compliance, and granting such other and further relief as the Court deems necessary and appropriate.

Dated: January 31, 2019

NORRIS McLAUGHLIN, P.A.

By: /s/ Morris S. Bauer
Morris S. Bauer, Esq.

LIVINGSTON HOWE LLP

By: /s/ Jeffrey E. Livingston
Jeffrey E. Livingston, Esq.

Attorneys for Michael Engelberg