**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J LBR 9004-1(b)

**NORRIS McLAUGHLIN, P.A.**
Morris S. Bauer, Esq.
400 Crossing Boulevard, 8th Floor
P.O. Box 5933
Bridgewater, New Jersey 08807
(908) 722-0700
msbauer@norris-law.com

  - and -

**LIVINGSTON HOWE LLP**
David D. Howe, Esq. (admitted *pro hac vice*)
Jeffrey E. Livingston, Esq. (admitted *pro hac vice*)
747 Third Avenue, 20th Floor
New York, NY 10017
Tel: 212-986-7887
david@livingstonhowe.com
jeff@livingstonhowe.com

*Attorneys for Michael Engelberg*

| | |
|---|---|
| In Re | CHAPTER 11 |
| **AMERICAN CENTER FOR CIVIL JUSTICE, INC.,** | CASE NO.: 18-15691/CMG |
| Debtor. | Judge: Hon. Christine M. Gravelle |

### SUPPLEMENTAL CERTIFICATION OF JEFFREY E. LIVINGSTON, ESQ. IN FURTHER OPPOSITION TO DEBTOR'S MOTION TO QUASH SUBPOENAS SERVED ON CAPLIN & DRYSDALE AND LOEB & LOEB, AND IN SUPPORT OF CROSS-MOTION TO COMPEL

I, Jeffrey E. Livingston, Esq. of full age, hereby certify as follows:

1.  I am licensed to practice law in the State of New York, and have been admitted in this proceeding *pro hac vice*. I am a member of the firm Livingston Howe LLP and serve as co-counsel to Michael Engelberg, a creditor and party-in-interest in the above captioned bankruptcy

case of the American Center for Civil Justice, Inc. (the "Debtor").  As such, I am familiar with the law and facts concerning the Debtor's bankruptcy proceedings.

2.    I submit this Certification in further support of Michael Engelberg's opposition to the Debtor's motion (Docket No. 327) to quash subpoenas served on Caplin & Drysdale, Chartered ("Caplin & Drysdale") and Loeb & Loeb LLP ("Loeb & Loeb"), and in support of his cross-motion to compel compliance with those subpoenas.  Dr. Engelberg seeks a determination (1) that ACCJ has waived the attorney-client privilege with respect to communications between its representatives and its attorneys in connection with an IRS audit inquiry during the years 2012-14, and (2) that, in any case, the crime-fraud exception to the attorney-client privilege applies to such communications, and therefore that responsive, relevant documents in the possession of its attorneys must be produced, and the attorneys required to testify on matters that the privilege would otherwise protect.

3.    Incorporated herein by reference is my Certification dated January 31, 2019 (Doc. No. 329-1) and the Exhibits annexed thereto.

4.    The purpose of this supplemental certification is to present certain additional documents that further demonstrate the merits of both branches of the cross-motion.[1]  These documents underscore the extent to which the first law firm retained by ACCJ to provide advice on the IRS audit, Roberts & Holland, was misled by ACCJ.  As noted further below, we anticipate issuing a further subpoena to that firm, and we expect that the attorney-client privilege issue will have to be addressed with regard to it as well.

---

[1] The manner in which documents have been produced by ACCJ and RLT in this case has made an organized review difficult.  The documents have been produced without reference numbers (Bates numbers) and for the most part in a disorganized mass.

5.      By way of background, annexed hereto as Exhibit A is a Subpoena issued to Roberts & Holland on or about October 5, 2018, and as to which Roberts & Holland, through its partner JoAnn Luehring, accepted service on the same date. This subpoena, which was narrowly drawn, called for Roberts & Holland to produce "[a]ll documents provided to Roberts & Holland LLP by the American Center for Civil Justice, Inc. and/or any of its representatives during the period December 1, 2011 to December 31, 2012."

6.      In response to the subpoena, on or about October 24, 2018, Roberts & Holland agreed to produce documents it deemed non-privileged. Among the documents it produced was an email from Saul Deutsch of Roth & Co., an accountant working on the IRS audit for ACCJ, dated February 13, 2012, at 11:42 am, and the attachment to the email, a set of board minutes for an ACCJ board meeting purportedly held on May 9, 2010 (annexed hereto as Exhibit B). The minutes were not signed.

7.      Annexed hereto as Exhibit C is an email dated October 2, 2012 from Ms. Luehring to Michael Engelberg and Jed Perr (referred to as Eli) regarding a draft list of ACCJ activities to be submitted to the IRS. This email was produced in this proceeding by Jed Perr and RLT. This email appears to precede the October 4, 2012 email previously filed as Exhibit J to my January 31, 2019 Certification (Doc. No. 329-11) (mistakenly referred to in my prior Certification as being dated October 24, 2012).

8.      Annexed hereto as Exhibit D is a copy of the memo dated October 5, 2012, as actually sent to the IRS by JoAnn Luehring, previously filed in this matter as Doc. No. 318-2. This is apparently the memo referred to in draft form in emails dated October 2, 2012 (Exhibit C above) and dated October 4, 2012 (Exhibit N to my January 31, 2019 Certification, Doc. No. 329-11). In the October 5 memo, Ms. Luehring indicates at page 3, item 11, that the Collett case generated "no

3

monetary receipts." Unbeknownst to Ms. Luehring, that statement was incorrect, as it is well-documented that the Collett case generated receipts, in the form of four checks drawn to the order of ACCJ in the aggregate amount of $2,010,000, which were diverted and deposited by Jed Perr to an account of RLT.

9.      Annexed hereto as Exhibit E is a chain of emails, produced in this proceeding by Jed Perr and RLT, which includes, at page 3, an email dated October 29, 2012, from Ms. Luehring to Michael Engelberg, in which she presents a draft of an email she proposes to send to ACCJ board members. In the draft message to Board members, she states that she has "a few concerns . . . about recent developments with the Center." She states further that her "hope is to determine whether proper governance procedures are being followed in reaching certain decisions." She names individuals she understood to be ACCJ directors. She adds the following: "In addition, I suggest that Jed Perr attend ... as it appears he is taking actions on behalf of the Center." (Emphasis supplied.)

10.     Annexed hereto as Exhibit F is an email chain, also produced in this proceeding by Jed Perr and RLT, containing at page 2 an email from Ms. Luehring to Jed Perr dated November 15, 2012, forwarding to Jed Perr the February 13, 2012 email from Saul Deutsch to Ms. Luehring, along with the unsigned 2010 ACCJ Board minutes that were attached to Mr. Deutsch's email (referred to above at paragraph 5, as Exhibit B).

11.     Annexed hereto as Exhibit G is an email chain produced by ACCJ in this proceeding. It includes an email from Neal Sher to Ms. Luehring dated December 7, 2012, in which Mr. Sher instructs Ms. Luehring that "any and all communications with ACCJ should go through me, as counsel to the Center."

4

12.    Exhibit G also contains an email from Ms. Luehring to Mr. Sher dated December 14, 2012, in which Ms. Luehring stated her "concerns about governance and operations of the Center."  She further noted that "we know ... that the records of the Center are somewhat disorganized."

13.    In the third paragraph of her December 14, 2012, email to Mr. Sher (Exhibit G), Ms. Luehring stated that she believed it "necessary to call a meeting of the board to go through the members' fiduciary duties and to resolve some of the misconnections and differences of late." She stated that she had been informed that "steps had been taken in recent weeks and months, apparently without the participation of the full board." She stated she was "concerned that actions are being taken regarding items and issues that need the input and approval of the full board." (Emphasis supplied.)  She stated that she had "asked several times for such a meeting, without success," and she requested that Mr. Sher, "as counsel to the Center, arrange for a special meeting of the entire board in the very near future." (Emphasis supplied.)  She closed the paragraph by stating that "[w]ithout a full board meeting that I attend, my ability to represent the Center through the audit may be jeopardized."

14.    As noted, Exhibits C through G hereto have been produced or filed in this proceeding by ACCJ or Jed Perr/RLT. Along with other evidence before the Court on the instant motion and cross-motions, these documents substantiate Dr. Engelberg's contentions (i) that ACCJ has waived the attorney-client privilege and (ii) that in connection with the IRS audit, ACCJ and its representatives – to wit, Eli Perr, Jed Perr, and likely also Neal Sher – were engaged in a fraudulent and/or criminal scheme to mislead the IRS by means of false and misleading statements concerning: ACCJ's financial recovery in the Collett case; the $2 million in checks the Collett family members drew to the order of ACCJ and delivered, through their counsel, to ACCJ; the

transaction whereby ACCJ handed off the checks to Jed Perr for deposit to RLT; the purported 2007 Agreement; and Eli Perr's role in the matter.

15.    In view of remaining unanswered questions, Dr. Engelberg also intends to issue a further subpoena to Ms. Luehring's firm, Roberts & Holland, for additional documents and for her deposition testimony.  We intend to explore the Debtor's lack of full disclosure and misleading statements to Roberts & Holland, particularly its efforts to mislead Ms. Luehring, and thus the IRS, about ACCJ's recovery of $2 million in the Collett case and its failure to produce the 2007 Agreement to Ms. Luehring when it was clearly called for in the IRS's requests then pending. In negotiating a response to the prior subpoena, Roberts & Holland asserted the attorney-client privilege, so it is likely that we will have to ask the Court to hear and determine that privilege issue as well.

I hereby certify that the foregoing statements made by me are true.  If any of the foregoing statements made by me are willfully false, I am subject to punishment.

*/s/ Jeffrey E. Livingston*
Jeffrey E. Livingston

Dated: New York, New York
         February 11, 2019

# EXHIBIT A

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of __New Jersey__

In re __American Center for Civil Justice, Inc.__
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. __18-15691 (CMG)__

Chapter __11__

_____
Plaintiff
v.
_____
Defendant

Adv. Proc. No. _____

## SUBPOENA TO TESTIFY AT A DEPOSITION
## IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: __Jo Ann Luehring, Esq., Roberts & Holland LLP__
*(Name of person to whom the subpoena is directed)*

[X] *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this bankruptcy case (or adversary proceeding). If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| PLACE  The Berkman Law Office, LLC,<br>111 Livingston St., Ste. 1928, Brooklyn NY 11201 | DATE AND TIME<br>October 18, 2018, 10:00 a.m. |
|---|---|

The deposition will be recorded by this method:
Stenographic reporter.

[X] *Production*: You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:
See rider attached.

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: __October 5, 2018__

CLERK OF COURT

OR

_____
*Signature of Clerk or Deputy Clerk*

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
__Michael Engelberg__ , who issues or requests this subpoena, are: Law Offices of Douglas T. Tabachnik,
Esq., 63 West Main St., Freehold, NJ 07728, (732) 780-2760, dtabachnik@dttlaw.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**Rider to Subpoena**

**Definitions and Instructions**

1.    The definitions and instructions contained in Federal Rules of Civil Procedure 34 (a)(1 )(A) and (b)(2)(E) apply here.

2.    The documents sought herein shall be deemed to include, without limitation, original writings and recordings of any nature whatsoever, and all non-identical copies thereof (whether different from the original because of notes made on such copy or otherwise) in the possession, custody or control of plaintiffs or its attorneys, regardless of where the documents are located. Such writings or recordings include, but are not limited to, contracts, agreements, records, invoices, receipts, work orders, memoranda, reports, analyses, returns, summaries, studies, checks, charts, statistics, calculations, drawings, specifications or other recordings, letters, correspondence (interoffice or otherwise), e-mail, communications, films, videotapes, data stored on a computer or recorded by a computer, data stored or recorded in magnetic form, computer printouts, calendar or diary entries, time management logs, notes, expense reports, travel reports, minutes of directors, officers or committee meetings, logs, working papers, agendas, bulletins, notices, announcements, instructions, manuals, pamphlets, books, brochures, photographs, photographic slides, transparencies, schedules, telegrams, telexes, facsimiles, and teletypes, deeds of conveyance, closing statements, applications for financing, any and all documents related to the proposed or actual consummation of any real estate transaction, bank statements, bank notices, and any draft of the forgoing.

3.    The term "e-mail" means all electronic mail, sent or received either internally within the plaintiffs' computer network or outside the network, including replies to and forwards of such electronic mail. The e-mail requested herein shall be provided to counsel for Dr. Michael Engelberg and it shall include the "To," "From," "CC," "BCC" and "Subject" fields, as well as the time and date that such e-mail was sent and/or received, and any other related metadata associated with same.

4.    The terms "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope.

5.    The term "concerning" means any relationship of whatever kind or nature, be it direct or indirect, and includes, without limitation, evidencing, concerning, referring to, embodying, connected with, commenting upon, responding to, showing, describing, mentioning, identifying, analyzing, reflecting, supporting and constituting.

6.    To the extent that any of the following requests may be subject to a claim of privilege, respond to so much of such request as does not require, in your view, disclosure of privileged information. As to every document withheld on the ground of privilege: (1) identify the nature of the document; (2) identify and describe the subject matter of the document; (3) specify the date(s) upon which the document was prepared and/or transmitted; (4) identify the person(s) who prepared the document and to whom the document was circulated, and identify all persons now in possession of the document; and (5) describe the claim of privilege and state the factual basis for the claim.

7.    If any required document has been destroyed or discarded, identify the document by providing the information called for in subparagraphs (1) through (4) of the preceding paragraph, and provide the date of destruction or discard and the reason therefor.

8.    All electronically stored documents are to be produced in "native format."

9.    To the extent that you consider any portion of the following requests objectionable, state specifically the portion of each request that is claimed to be objectionable, specify the grounds for each such objection, and otherwise respond to the remainder of the request.

10.    This request shall be deemed continuing and you shall promptly produce in the form of supplementary document productions any document requested herein that subsequently is discovered or obtained by, or becomes available to, you or your attorneys.

**PLEASE BE FURTHER ADVISED THAT THIS SERVES AS NOTICE AND DEMAND THAT THE PARTY OR PARTIES IN CONTROL OR DIRECTION WITH RESPECT TO ANY OF THE REFERENCED MATERIAL TAKE STEPS TO PRESERVE AND RETAIN ANY AND ALL ELECTRONIC AND DOCUMENTARY INFORMATION RELATED TO THE SUBJECT MATTER.** The term, "electronic data" refers to, and includes storage records, devices, computers, and other electronic storage devices (i.e., without limitation, copiers, laptops, smartphones and cell phones) at the Deponent's place of business and where otherwise located. The material required to be preserved includes, without limitation, electronic "metadata" such as tracked changes, revision histories, authorship, deletions, and similar intonations related to documents and electronic files. The Deponent's preservation obligations extend to all electronic processing systems, even if they are replaced. This includes computer servers, stand-alone personal computers, hard drives, laptops, PDAs, blackberry, instant messaging, scanner or copier, and other electronic processing devices, such as jump drives.

THE DUTY TO PRESERVE SUCH MATERIALS MAY REQUIRE THE DEPONENT TO REFRAIN FROM OPERATING (OR REMOVING OR ALTERING FIXED OR EXTERNAL HARD DRIVES AND ANY REMOVABLE STORAGE MEDIA CONNECTED THERETO) PERSONAL COMPUTERS, NETWORK WORKSTATIONS, NOTEBOOK AND/OR LAPTOP COMPUTERS IF TO DO SO MIGHT COMPROMISE DATA AND INFORMATION. THE DUTY TO PRESERVE SUCH MATERIAL ALSO MAY REQUIRE

THE DEPONENT AND PERSONS WITHIN THE DEPONENT'S CONTROL TO RETAIN AND PRESERVE ANY BACKUP MEDIA OR OTHER STORAGE MEDIA, WHETHER ONLINE OR OFFLINE, AND REFRAIN FROM OVERWRITING OR DELETING INFORMATION CONTAINED THEREON, WHICH MAY CONTAIN ELECTRONIC DATA REFERENCED HEREIN.

### Documents Requested

All documents provided to Roberts & Holland LLP by the American Center for Civil Justice, Inc. and/or any of its representatives during the period December 1, 2011 to December 31, 2012.

2

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the
witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .


I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information concerning attempted service, etc.:

B2560 (Form 2560 – Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**EXHIBIT B**

**From:** Saul Deutsch
**To:** JoAnn Luehring
**Subject:** Minutes - Annual Meeting May 10.pdf - Adobe Acrobat Standard
**Date:** Monday, February 13, 2012 11:52:25 AM
**Attachments:** Minutes - Annual Meeting May 10.pdf





Saul Deutsch CPA

Manager

Tax Controversy and

Procedure

P. 718.975.5347
F. 718.975.5389
Sdeutsch@rothcocpa.com

1428 36th Street - Suite 200
Brooklyn, NY 11218
www.rothcocpa.com
718.236.1600 Fax
718.236.4849

Please consider the environment before printing this email message.

This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain information that is proprietary, confidential, and exempt from disclosure under applicable law. Any unauthorized review, use, disclosure, or any distribution is prohibited. If you have received this email in error please notify the sender by return email and delete the original message. Please note, the recipient should check this email and any attachments for the presence of viruses. The organization accepts no liability for any damage caused by any virus transmitted by this email.
TREASURY DEPARTMENT CIRCULAR 230 DISCLAIMER: To ensure compliance with certain U.S. treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this email, including any attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service nor may it be used for promoting, marketing or recommending to any other party any transaction or matter addressed herein or therein. (This foregoing statement is made in accordance with Circular 230, 31 C.F.R. Part 10)

**MINUTES**
**OF THE**
**ANNUAL MEETING**
**OF THE**
**BOARD OF DIRECTORS**
**OF**
**AMERICAN CENTER FOR CIVIL JUSTICE, INC.**

The annual meeting of the Board of Directors of American Center For Civil Justice, Inc. ("Corporation") was held on May 9, 2010 at 10:00 a.m. at the Corporation's offices, 1331 55th Street, Brooklyn, New York.

The following Directors were present:

> Milton Pollack
> Jonathan Tendler
> Mark Hirschman

being all of the Directors of the Corporation and thus a quorum. Also present were Eliezer Perr, Michael Engelberg and Joel Seitler.

Milton Pollack served as Chairman and Eliezer Perr served as Secretary.

The Chairman announced that the Board of Directors meeting was duly convened and was ready to transact such business as may lawfully come before it.

1.      The Chairman indicated his term to serve on the Board of Directors had expired and, thus, the first order of business was the formal nomination and election of a Director. After further discussion, Milton Pollack was nominated to continue to serve as a member of the Corporation's Board of Directors. Upon motion duly made, and seconded, Milton Pollack was unanimously re-elected to serve as a member of the Board of Directors of the Corporation until the 2013 annual meeting.

2.      The Chairman yielded the floor to Jonathan Tendler and Mark Hirschman who indicated that, for various reasons, they would no longer be able to devote the time and energy needed to properly serve as a director and would be formally submitting their respective resignation effective upon election of the individuals to fill the proposed vacancies on the Board. Thus, the next order of business was the formal nomination and election of two individuals to serve on the Corporation's Board of Directors. After further discussion, Michael Engelberg and Eliezer Perr were nominated to serve as members of the Corporation's Board of Directors with Michael Engelberg filling Jonathan Tendler's seat and Eliezer Perr filling Mark Hirschman's seat. Upon motion duly made, and seconded, the nominees were unanimously elected to serve as members of the Board of Directors of the Corporation for the unexpired term of the director he is replacing.

3.      The Chairman stated that Albert Issacs had tendered his resignation as Vice-President. In addition, the Chairman indicated that after serving as President for the past number of years, he felt that it is time to step down and suggested that Mr. Perr, who has been working tirelessly for the Corporation, deserved the honor and recognition as Chairman of the Board and President/Executive Director.  Thus, the next order of business was the election of the officers of the Corporation.

The following persons were nominated:

| | |
|---|---|
| President/Executive Director: | Eliezer Perr |
| Vice President: | Joel Seitler |
| Secretary/Treasurer: | Milton Pollack |

A vote of the Directors was taken and the nominees were unanimously elected officers of the Corporation to serve for a period of three (3) years, without compensation, except Eliezer Perr, who would continue to receive his compensation of $200,000 per annum.

4.    The Chairman circulated a draft of the Corporation's Form 990 Return (covering its activities for the year-ending 2010 (April 2009 – March 2010) for review. The Directors reviewed the Return and requested that the President follow up with the accountant to address some open questions and issues raised and otherwise approved its filing upon completion.

5.    The Chairman distributed a copy of the Corporation's conflict of Interest policy and asked those present to review the policy and execute the certification certifying that the individual had reviewed the policy and is in compliance thereof.

**RESOLVED,** that the signing of these minutes by the Directors shall constitute full ratification thereof and waiver of notice of the meeting by the signatories.

There being no further business before the meeting, on motion duly made, seconded and carried, it was, adjourned.

Dated: May ____, 2010


_____          _____
Milton Pollack                               Michael Engelberg



_____
Eliezer Perr

2

**EXHIBIT C**

### JoAnn.Luehring

| | |
|---|---|
| **From:** | JoAnn.Luehring |
| **Sent:** | Tuesday, October 02, 2012 1:41 PM |
| **To:** | 'michael@centerforciviljustice.org'; 'perr@acenter.org' |
| **Subject:** | Review of list of activities |
| **Attachments:** | 00280036.DOC |

Michael and Eli,

Maria Bianco, the current agent on the audit, has asked for a list of activities engaged in by the Center other than it involvement in the Franqui case. I have prepared such a list and description, but would like you to review and approve it before I send it. Of course, she is eager to see it, so I would appreciate a quick turn-around (Michael, I realize you are in Israel but hope that you can review from there). Please call with any changes, suggestions, corrections, additions, etc. at your earliest convenience. Thanks.

Best,

JoAnn

**JoAnn Luehring**
**ROBERTS & HOLLAND LLP**
Worldwide Plaza
825 Eighth Avenue, 37th Floor
New York, NY 10019-7498
Tel: 212-903-8731
Fax: 212-974-3059
Email: jluehring@rhtax.com
Bio | Website

---

This written advice was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. (This legend has been affixed pursuant to United States Treasury Regulations governing tax practice.)

The information transmitted herein is intended only for the person(s) to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance on, this information by persons other than the intended recipient(s) is prohibited. If you received this transmission in error, please reply to the sender and delete the material from your computer.

PERR / ACCJ-RLT 9/4/18 - 00327

**EXHIBIT D**

P.002                                      %66                                      OCT-06-2012  18:21

**ROBERTS & HOLLAND LLP**

# MEMORANDUM

To:      Maria Bianco, Internal Revenue Service        October 5, 2012

cc:      Michael Engelberg
         Eli Perr
         Neal Sher

From:    JoAnn Luehring

Re:      **September 20, 2012 Question Regarding**
         **Current Activities of Center**

On September 20 you raised during a phone call the question of what activities the American Center for Civil Justice currently carries on. I have listed below a number of current activities as well as a few additional activities it engaged in during the past 15 years other than the Lod massacre lawsuits, the income from which is at issue in the current audit.

Current activities:

1.      Civil Rights Abuses on Campuses. The Center provides assistance to students at U.S. colleges and universities whose civil rights are abused by other students and ignored or condoned by the institution's administration. Most instances derive from anti-Semitism by pro-Muslim or anti-Israel students and organizations. The abuse largely consists of intimidation and assault on Jewish or pro-Israel students through physical attacks; through presentation of biased, prejudicial and outdated stereotypes of Jews to the public; and through preventing such students from congregating, holding meetings or encouraging other students to join their activities. The Center has sought relief for the affected students by speaking with university administrators to insist that the university step in to prevent the abuses. The Center successfully initiated and won a lawsuit involving the University of California at Berkeley, the resolution of which commanded that the Administration examine the problem and its own role in creating it and stopping it. No monetary damages were sought or awarded.

This past July the Center was responsible for drafting and sending to the Office of Civil Rights of the Federal Department of Justice a letter seeking an OCR investigation of civil rights abuses at Berkeley. The Department of Justice has accepted the letter of complaint and will mount a full-blown investigation into civil rights abuses at Berkeley and the acquiescence by the administration. The resulting report will no doubt be instructive to other educational institutions as well. It is expected that the OCR investigation will encourage schools to be more sensitive to the infringement of the civil

{00280036-1}

P.003          %99          OCT-06-2012  18:22

## ROBERTS & HOLLAND LLP

rights of these and other minority groups and to institute policies that prohibit such abuses.

2.    Fort Hood, Texas massacre:  The Center has interviewed the surviving victims of the November 5, 2009 massacre and has engaged the Dinsmore law firm to file suit against the U.S. Departments of Defense and Justice to seek damages on behalf of 25 of the injured victims of the massacre, the estates of the 13 victims killed, and 122 of the family members of those 38.  A notice of claim was filed in November of 2011 and the actual lawsuit will be filed in Federal court by early November.  The suit alleges that the Departments of Defense and Justice were willfully negligent under the Federal Torts Claims Act and the Civil Rights Act in not preventing the attack, claiming that those Departments had sufficient knowledge about the lone perpetrator to have safeguarded against such an attack.  The perpetrator was an Army doctor stationed at Fort Hood who was a Muslim American of Palestinian descent.  He had reportedly demonstrated tendencies toward radical Islam for several years prior to the shootings.  He also had known contact with Anwar al-Awlaki and two participants in the 9/11 tragedy prior to the massacre.  His co-workers and supervisors reportedly regarded him as unsatisfactory at his job and very involved in radical Islam.  The suit alleges that the federal government put political correctness, i.e., advancing a Muslim without following the usual fitness and promotion protocols, ahead of its duty to protect its military employees and others at a military installation.  The lawsuit seeks public recognition for the victims; an acknowledgement that the action resulted from terrorist activity rather than workplace violence; improved policies to deal with cases of terrorism; the award of Purple Hearts to the military dead; and damages in the hundreds of millions of dollars for the victims.  Although the chances for success are slim, and even if successful, damages awarded will be much less than sought, the Center is paying for the attorneys and other costs of the action in fulfillment of its mission to decrease terrorism.

3.    Grant-making to other organizations that are tax-exempt under sections 501(a) and 501(c)(3):  Some are peace organizations such as the Washington Peace Center and the David Horowitz Freedom Center; others are oriented to the protection of Israel from outside threats, such as Voices United for Israel and the Middle East Forum; and others are educational organizations, such as Vaad L'Hatzolas Nidchei Yisroel and Machon Bais Yaakov Girls School.  The grants are generally restricted to the examination of civil and human rights abuses, particularly concerning terrorism.

4.    Work with primary-level schools, primarily Jewish, to develop improved security measures.  Tasks include educating the educational institution and its staff about methods used by human rights abusers, including terrorists, and steps that may be taken effectively to stop or deter the abusive activity.

5.    Instruction of law enforcement professionals:  The Center makes occasional presentations to police, security squads, and other law enforcement professionals regarding terrorism, methods used by terrorists, and improved responses to attacks and pre-attacks.  This provision of advice and intelligence has been underway for about 10 years.  It is usually performed in concert with other organizations to provide

APR-25-2013  08:29          INTERNAL REVENUE          718 488 2358          P.030

ROBERTS & HOLLAND LLP

written materials and deliver the message. Templates for improved security measures are distributed, as well as templates for widespread delivery of the instructions and techniques presented so that the programs may be duplicated.

6.    Latin American Counterterrorism.  The Center is entering into a collaboration with the Foundation for Defense of Democracies to establish a counterterrorism program in Latin America.  The program will be directed by Alberto Nisman, who was the prosecuting attorney in the Asociacion Mutual Israelita Argentina (AMIA) Jewish Center bombing in Argentina in 1994, during which 85 persons were killed and as many as an additional 200 injured.  The counterterrorism project is in the early planning stages.

### Earlier Activities:

1.    Lawsuits.  The Center retained law firms to initiate lawsuits in a substantial number of cases of terrorist activity.  For example, the Center retained a major law firm to represent relatives of U.S. airmen murdered in the Khobar Towers bombing in Saudi Arabia in 1996.  The case resulted in a judgment of $650,000,000 but no collection.  Similarly, the Center instigated a lawsuit on behalf of the Estate of Lt. Col. William F. Buckley, U.S. Army, Chief Officer for the Central Intelligence Agency, who was captured and murdered in March of 1984 in Beirut.  A $321,021,284 judgment was awarded but never paid.

Following is a partial list of additional cases and their outcomes that the Center helped to bring about, through provision of research and investigation, the identification of amenable law firms, and funding of certain related activities.  In none of these cases did or will the Center receive reimbursement for its costs and expenditures or otherwise receive any monies:

1. Flatow v. Iran:  $26 million has been paid to victims and lawyers; nothing to the Center;
2. Eisenfeld v. Iran:  $27+ million has been collected by others;
3. Weinstein v. Iran:  No collection on $41 million judgment;
5. Stern v. Iran:  $310 million judgment, no collection;
6. Bombing of the AMIA Jewish Center in Argentina; no judgment
7. Bombing of the USS Cole; no collection
8. Mumbai massacre; no collection
9. Collett v. Libya; Center helped bring about the recent return of the body of a journalist who was killed in Lebanon in 1985 (with no monetary receipts); and
10. Empire State Building shooting in 1997.

2.    U.S. Ex-Prisoners of War:  The Center was active in the late 1990s and early 2000s helping U.S. ex-prisoners of war in Japan during WWII seek recompense

OCT-06-2012  18:22                        986                        P.006
                                                          TOTAL P.05

ROBERTS & HOLLAND LLP

for human rights abuses against them. During the war, those POWs were enslaved by Japanese industries and forced to perform long hours of grueling work under inhumane conditions. During the war, nearly 27,500 Americans were captured and interned by the Japanese; only 16,000 survived. These survivors never received any kind of compensation, from the Japanese government, the Japanese businesses or the U.S. government, for the abuse of their human rights. The Center alerted the public of these uncompensated atrocities and spawned many lawsuits against Japanese corporations for the enslavement that had occurred. The Center engaged in historical and legal research to assist the claims in moving forward, and it espoused a direct settlement between the companies and the claimants, urging many major Japanese companies to come forward with a pool of funds. The Center represented the interests of several hundred of the survivors. The Center neither asked for nor received any funds or any portion of any settlement.

The Center and other interested organizations encouraged the Senate to hold hearings on the subject, which the Senate Committee on the Judiciary did on June 28, 2000. Many concerned parties, including the Center, made statements in favor of the government taking a role similar to the assistance the government gave American POWs in Germany toward receiving compensation for the human rights abuses they suffered during WWII. Unfortunately, the effort was largely unsuccessful, resulting in little assistance with legal action against the Japanese businesses or governments, largely because of treaties and concessions made to Japan decades ago.

3.    The Center participated on a United Nations panel that examined the trafficking of American women and children in Saudi Arabia.

4.    During a number of SCUD missile attacks by Palestinians to bombard Israel, the Center transported Israeli children to the U.S. for protection from the life-threatening assaults.

5.    The Center helped Canada draft and adopt legislation similar to U.S. law in an effort to allow Canadian citizens to sue terrorist states in Canadian courts. The effort came to fruition in 2009 with the passage of Bill C-35, "An Act to Deter Terrorism, and to Amend the State Immunity Act." The Act creates a cause of action that allows Canadian victims of terrorism after January 1, 1985 to sue foreign states that have supported terrorist entities that have committed such acts.

NOTE: In all of the activities and lawsuits mentioned above, the Center had and has little expectation of any net monetary inflow; it expends all of its funds on its various programs, including the lawsuits, and when money is low, all activities are carried on as best they can be by volunteers and low-cost aid. Salaries are foregone, with the hope of making up for them when funds arise. Further, all plaintiffs in the lawsuits are either indigent or in any event incapable of bringing a legal action.

APR-25-2013  08:29                INTERNAL REVENUE            718 488 2358    P.032

**EXHIBIT E**

### JoAnn.Luehring

| | |
|---|---|
| **From:** | JoAnn.Luehring |
| **Sent:** | Monday, November 05, 2012 11:27 AM |
| **To:** | 'Michael Engelberg' |
| **Subject:** | RE: FW: proposed email to Board of Directors of Center |

Michael,

I am finally back in my office.  I was stuck in my house, with no power, no cell service and no gas until yesterday morning.  I still didn't have email or cell service, so just now listened to my cell messages and know you left me several voicemails.  I am going through my email and office phone messages now.  I will call you within the next hour, if that works for you.  I know this is the deadline for filing the Ft. Hood lawsuit.

JoAnn

**JoAnn Luehring**
**ROBERTS & HOLLAND LLP**
Worldwide Plaza
825 Eighth Avenue, 37th Floor
New York, NY  10019-7498
Tel: 212-903-8731
Fax: 212-974-3059
Email: jluehring@rhtax.com
Bio | Website

This written advice was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. (This legend has been affixed pursuant to United States Treasury Regulations governing tax practice.)

The information transmitted herein is intended only for the person(s) to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance on, this information by persons other than the intended recipient(s) is prohibited. If you received this transmission in error, please reply to the sender and delete the material from your computer.

**From:** Michael Engelberg [mailto:michael@centerforciviljustice.org]
**Sent:** Sunday, November 04, 2012 3:01 PM
**To:** JoAnn.Luehring
**Cc:** Michael Engelberg
**Subject:** Re: FW: proposed email to Board of Directors of Center

JoAnn,
With all the difficulties we have been having with Rabbi Perr regarding the filing of the Fort Hood Compaint, I am convinced Rabbi Perr is deliberately attempting to disolve the American Center for Civil Justice and has no intention of filing the latest 990 Form. Please call and advise.
Michael

On Mon, Oct 29, 2012 at 4:39 PM, JoAnn.Luehring <jluehring@rhtax.com> wrote:

Michael,

I see that you want me to be less specific about my concerns. However, I think it necessary to alert the board members that my concerns are not in general but rather have specific triggers. I propose the following revision:

Dear Board members,

I want to raise a few concerns I have about recent developments with the Center. My hope is to determine whether proper governance procedures are being followed in reaching major decisions, and to give guidance if they are not. I propose that we hold a meeting or conference call sometime this week to discuss a number of items, in particular the following:

1. Governance obligations of a not-for-profit organization, including meetings, notice of meetings, division of rights and responsibilities between the Board of Directors and the officers, the decision-making process, avoidance of private benefit, and required reporting, each of which affects the lawful status of the organization;

2. The state law fiduciary responsibilities of board members; and

3. The filing of the Form 990 for the year ended March 31, 2012. The outside deadline for filing that return is November 15.

I suggest an in-person meeting at my office on Thursday or Friday of this week, but a conference call could also work. Notice should go to all directors. The 2011 Form 990 listed Milton Pollack, Michael Engelberg, Jonathan Tendler, Mark Hirschman, and Joel Seitler as directors; is that list current? According to the Form 990, Eli Perr is executive director, Albert Isaacs and Joel Seitler are vice presidents, and Milton Pollack is secretary/treasurer. I do not believe that the officers also serve as directors.

In addition, I suggest that Jed Perr attend for a portion of the meeting/conference call, as it appears he is taking actions on behalf of the Center.

Please respond to me at your earliest convenience.

JoAnn

JoAnn Luehring
Roberts & Holland LLP
Worldwide Plaza
825 Eighth Avenue, 37th Floor
New York, NY 10019
212-903-8731
Fax: 212-974-3059

---

This written advice was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. (This legend has been affixed pursuant to United States Treasury Regulations governing tax practice.)

PERR / ACCJ-RLT 9/4/18 - 00335

The information transmitted herein is intended only for the person(s) to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance on, this information by persons other than the intended recipient(s) is prohibited. If you received this transmission in error, please reply to the sender and delete the material from your computer.

**From:** Michael Engelberg [michael@centerforciviljustice.org]
**Sent:** Monday, October 29, 2012 4:07 PM
**To:** JoAnn.Luehring
**Cc:** Michael Engelberg
**Subject:** Re: FW: proposed email to Board of Directors of Center

Rather than be specific, I would recommend the following

Board members,

I want to raise a few concerns I have about recent developments with the Center. My hope is to determine whether proper governance procedures are being followed in reaching major decisions, and to give guidance if they are not. I propose that we hold a meeting or conference call sometime this week to discuss a number of items, in particular the following:

1. Obligations of a not-for-profit organization that include meetings, decisions, IRS returns, etc. that affect the lawful status of the organization.

2. Fullfiling the fiduciary responsibilities of board members as it pertains to decisions made by officers.

3. Do all Board members understand their state law fiduciary duties to the Center?

I suggest an in-person meeting on Thursday or Friday of this week, but a conference call could also work. Are the current directors those listed on the 2011 Form 990, i.e., Milton Pollack, Michael Engelberg, Jonathan Tendler, Mark Hirschman, and Joel Seitler? According to the Form 990, Eli Perr is executive director, Albert Isaacs and Joel Seitler are vice presidents, and Milton Pollack is secretary/treasurer. I do not believe that the officers are also directors.

In addition, I suggest that Jed Perr attend for a portion of the meeting/conference call, as it appears he is taking actions on behalf of the Center.

Please respond to me at your earliest convenience.

On Mon, Oct 29, 2012 at 12:17 PM, JoAnn.Luehring <jluehring@rhtax.com> wrote:
Michael,

I am working from home. Please get me your comments about the proposed email as soon as possible so that we may send it out before I lose power, which I have no doubt I will at some point today. My cell number if you wish to speak is 914-260-3941, but I think you already have it.

JoAnn

JoAnn Luehring
Roberts & Holland LLP
Worldwide Plaza
825 Eighth Avenue, 37th Floor
New York, NY 10019
212-903-8731
Fax: 212-974-3059

---

This written advice was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. (This legend has been affixed pursuant to United States Treasury Regulations governing tax practice.)

---

The information transmitted herein is intended only for the person(s) to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance on, this information by persons other than the intended recipient(s) is prohibited. If you received this transmission in error, please reply to the sender and delete the material from your computer.

---

**From:** JoAnn.Luehring
**Sent:** Friday, October 26, 2012 5:48 PM
**To:** michael@centerforciviljustice.org
**Subject:** proposed email to Board of Directors of Center

Board members,

I want to raise a few concerns I have about recent developments with the Center. My hope is to determine whether proper governance procedures are being followed in reaching major decisions, and to give guidance if they are not. I propose that we hold a meeting or conference call sometime this week to discuss a number of items, in particular the following:

1.    Obligations of a not-for-profit organization that include meetings and decisions that affect the lawful status of the organization.

2.    Fullfilling the fiduciary responsibilities of board members as it pertains to decisions made by officers.

3.  Do all Board members understand their state law fiduciary duties to the Center?

 I suggest an in-person meeting on Thursday or Friday of this week, but a conference call could also work.  Are the current directors those listed on the 2011 Form 990, i.e., Milton Pollack, Michael Engelberg, Jonathan Tendler, Mark Hirschman, and Joel Seitler? According to the Form 990, Eli Perr is executive director, Albert Isaacs and Joel Seitler are vice presidents, and Milton Pollack is secretary/treasurer.  I do not believe that the officers are also directors.

In addition, I suggest that Jed Perr attend for a portion of the meeting/conference call, as it appears he is taking actions on behalf of the Center.

Please respond to me at your earliest convenience.

* * * * * * * * * * * * * * * * * * * *

Michael, please let me know if you agree with the above and whether you feel I have omitted anything you think important.

**JoAnn Luehring**
**ROBERTS & HOLLAND LLP**
Worldwide Plaza
825 Eighth Avenue, 37th Floor
New York, NY  10019-7498
Tel: 212-903-8731
Fax: 212-974-3059
Email: jluehring@rhtax.com
Bio | Website

This written advice was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. (This legend has been affixed pursuant to United States Treasury Regulations governing tax practice.)

The information transmitted herein is intended only for the person(s) to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance on, this information by persons other than the intended recipient(s) is prohibited. If you received this transmission in error, please reply to the sender and delete the material from your computer.

# EXHIBIT F

**JoAnn.Luehring**

| | |
|---|---|
| **From:** | JoAnn.Luehring |
| **Sent:** | Monday, November 19, 2012 9:05 PM |
| **To:** | Michael Engelberg |
| **Subject:** | RE: FW: Minutes - Annual Meeting May 10.pdf - Adobe Acrobat Standard |

Michael,

Has he refused or just not answered you? Couldn't tell from your email. If you spoke directly with Benefeld, what did he give as a reason?

JoAnn

JoAnn Luehring
Roberts & Holland LLP
Worldwide Plaza
825 Eighth Avenue, 37th Floor
New York, NY 10019
212-903-8731
Fax: 212-974-3059

This written advice was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. (This legend has been affixed pursuant to United States Treasury Regulations governing tax practice.)

The information transmitted herein is intended only for the person(s) to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance on, this information by persons other than the intended recipient(s) is prohibited. If you received this transmission in error, please reply to the sender and delete the material from your computer.

**From:** Michael Engelberg [michael@centerforciviljustice.org]
**Sent:** Monday, November 19, 2012 9:22 AM
**To:** JoAnn.Luehring
**Subject:** Re: FW: Minutes - Annual Meeting May 10.pdf - Adobe Acrobat Standard

JoAnn,
Michael Benenfeld, the manager at Apple Bank is refusing to respond to my written request for American Center for Civil Justice bank statements. Apparently, Rabbi Perr is preventing the release of this information. I can only surmise that he has no intention of showing me bank statements for the year 2011-2012, for which the Form 990 is base on.
Michael

On Thu, Nov 15, 2012 at 11:18 AM, JoAnn.Luehring <jluehring@rhtax.com> wrote:
Here is the email I sent to Jed.

PERR / ACCJ-RLT 9/4/18 - 00344

JoAnn Luehring
**ROBERTS & HOLLAND LLP**
Worldwide Plaza
825 Eighth Avenue, 37th Floor
New York, NY 10019-7498
Tel: 212-903-8731
Fax: 212-974-3059
Email: jluehring@rhtax.com
Bio | Website

This written advice was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. (This legend has been affixed pursuant to United States Treasury Regulations governing tax practice.)

The information transmitted herein is intended only for the person(s) to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance on, this information by persons other than the intended recipient(s) is prohibited. If you received this transmission in error, please reply to the sender and delete the material from your computer.

**From:** JoAnn.Luehring
**Sent:** Thursday, November 15, 2012 7:20 AM
**To:** 'Perr@acenter.us'
**Subject:** FW: Minutes - Annual Meeting May 10.pdf - Adobe Acrobat Standard

Jed,

Here are the minutes I mentioned, as supplied by Roth & Co.

JoAnn

JoAnn Luehring
**ROBERTS & HOLLAND LLP**
Worldwide Plaza
825 Eighth Avenue, 37th Floor
New York, NY 10019-7498
Tel: 212-903-8731
Fax: 212-974-3059
Email: jluehring@rhtax.com
Bio | Website

This written advice was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. (This legend has been affixed pursuant to United States Treasury Regulations governing tax practice.)

The information transmitted herein is intended only for the person(s) to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other

use of, or taking of any action in reliance on, this information by persons other than the intended recipient(s) is prohibited. If you received this transmission in error, please reply to the sender and delete the material from your computer.

**From:** Saul Deutsch [mailto:sdeutsch@rothcocpa.com]
**Sent:** Monday, February 13, 2012 11:52 AM
**To:** JoAnn.Luehring
**Subject:** Minutes - Annual Meeting May 10.pdf - Adobe Acrobat Standard



**Roth&Company**
Certified Public Accountants & Cons

Saul Deutsch, CPA
Manager
Tax Controversy and
Procedure

P. 718.975.5347
F. 718.975.5389
Sdeutsch@rothcocpa.com

1428 36th Street - Suite 200
Brooklyn, NY 11218
www.rothcocpa.com
718.236.1600 Fax
718.236.4849



Please consider the environment before printing this email message.

**EXHIBIT G**

**Gmail**
by Google

Perr, E <ez@acenter.us>

---

**Fwd: American Center for Civil Justice**
1 message

Perr.us <perr@acenter.us>                                                                                           Mon, Dec 17, 2012 at 5:21 PM
To: "E. PERR" <ez@acenter.us>, Abraham Roth <aroth@rothcocpa.com>, Saul Deutch <sdeutsch@rothcocpa.com>

Further down JoAnn states that without a meeting with her attendance she can not further represent the Center

American Center for Civil Justice
Perr@ACenter.us
This e-mail is confidential and may also be privileged.

---------- Forwarded message ----------
From: Neal Sher <nealsher@gmail.com>
Date: Mon, Dec 17, 2012 at 10:48 AM
Subject: Fwd: American Center for Civil Justice
To: Jed Perr <perr@acenter.us>

Sent from my iPad

Begin forwarded message:

> From: JoAnn Luehring <jluehring@rhlax.com>
> Date: December 14, 2012, 4:46:41 PM EST
> To: Neal Sher <nealsher@gmail.com>
> Subject: RE: American Center for Civil Justice

Neal,

I'm sorry we haven't been able to speak about your email over the phone. As requested, I will communicate with you whenever I have audit issues to handle. Given that the audit is on-going and that we will be hearing from Agent Bianco soon, I am hopeful that you will be able to respond to my messages quickly.

We talked about the Center's internal issues on November 5th, so you know I have concerns about governance and operations of the Center. These concerns are integral to the audit. The decision being explored by the IRS is whether the Center is a charitable organization deserving of tax-exempt status. The way the Center governs itself is of crucial weight. The audit agent has expressed interest in how the victim/litigation process is handled, how significant the level of litigation will be in the future, and what other activities the Center has been, is and will be involved in. Ms. Bianco tells me that in the upcoming Information Document Review she will be seeking financial and other evidence of the Center's non-litigation-related activities. It would be best if corroborating information from the past several years can be compiled now, before the IDR is received, regarding those activities, including minutes of meetings as well as financial back-up, especially as we know from the preparation of the March 31, 2011 Form 990 that the records of the Center are somewhat disorganized. I expect that Rabbi Perr has the records that will be needed.

Given the current workings of the Center's board as conveyed to me, I believe it is necessary to call a meeting of the board to go through the members' fiduciary duties and to resolve some of the misconnections and differences of late. I have been informed, as you know, that steps have been taken in recent weeks and months, apparently without the participation of the full board, that go to the heart of the Center and its future. I am concerned that actions are being taken regarding items and issues that need the input and approval of the full board. I ask that you, as counsel to the Center, arrange for a special meeting of the entire board in the very near future. I have asked several times for such a meeting, without success, but believe that you may be more successful. I believe it important for all board members to participate in the special meeting and for you and me to be present as well. Without a full board meeting that I attend, my ability to represent the Center through the audit may be jeopardized.

I understand that Roth & Co. now is preparing the Form 990 for the year ended March 31, 2012. That return is due February 15, 2013, at the latest. Would the Center like me to review that 990 as it is prepared, as I did last year? Please let me know.

Best,

JoAnn

**JoAnn Luehring**
ROBERTS & HOLLAND LLP
Worldwide Plaza
825 Eighth Avenue, 37th Floor
New York, NY 10019-7498
Tel: 212-903-8731
Fax: 212-974-3059
Email: jluehring@rhtax.com
Bio | Website

This written advice was not intended or written to be used, and it cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. (This legend has been affixed pursuant to United States Treasury Regulations governing tax practice.)

The information transmitted herein is intended only for the person(s) to whom it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance on, this information by persons other than the intended recipient(s) is prohibited. If you received this transmission in error, please reply to the sender and delete the material from your computer.

From: Neal Sher [mailto:nealsher@gmail.com]
Sent: Friday, December 07, 2012 2:21 PM
To: JoAnn Luehring
Subject: American Center for Civil Justice

JoAnn:
As we go forward with the audit, any and all  future communications with the ACCJ should go through me, as
counsel to the Center.  I will see to it that any requests regarding the audit are properly handled.
Thanks
Neal

---
Law Offices
Neal M. Sher
phone: 646-201-8841
fax:    646-706-7029
nealsher@gmail.com
www.nealsher.com

WARNING! This electronic mail transmission is intended only for the addressee. It contains information from the law offices of Neal M. Sher which may be privileged, confidential and exempt from disclosure under applicable law. Dissemination, distribution, or copying of this by anyone other than the addressee or the addressee's agent is strictly prohibited. If this electronic mail transmission is received in error, please notify Neal M. Sher immediately at 646-201-8841.